No. 03-5857
File Name: 05a0885n.06
Filed: November 7, 2005

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JANET ROSE MARTIN and )
JAMES D. MARTIN, )
)
  Plaintiffs-Appellants, )
) ON APPEAL FROM THE
    v. ) UNITED STATES DISTRICT
) COURT FOR THE EASTERN
WAL-MART STORES, INC., ) DISTRICT OF TENNESSEE
)
  Defendant-Appellee. )

Before: **NELSON** and **GILMAN**, Circuit Judges, and **DONALD**, District Judge.[*]

**DAVID A. NELSON**, Circuit Judge. This is a slip-and-fall case that is governed by

the substantive law of Tennessee. Finding a lack of evidence that the defendant had notice

of a dangerous condition on its premises, the district court entered summary judgment against

the plaintiffs pursuant to Rule 56, Fed. R. Civ. P. The judgment will be affirmed.

I

Plaintiff Janet Rose Martin slipped and fell while shopping at a store operated by

defendant Wal-Mart in Newport, Tennessee. After falling, Mrs. Martin noticed a clear liquid

_____

[*]The Honorable Bernice Bouie Donald, United States District Judge for the Western
District of Tennessee, sitting by designation.

on the floor in a puddle about six or seven inches wide. Mrs. Martin believes that the liquid was water.

Another customer notified a Wal-Mart employee, Dorothy Lethco, that a customer had fallen in the health and beauty aids department. Ms. Lethco (a cashier in a nearby department) picked up a roll of paper towels and proceeded to the place where the mishap had occurred. According to Mrs. Martin, Ms. Lethco used the paper towels to clean up the water.

It had rained earlier that day and there was still moisture outside when Mrs. Martin entered the store. There were caution signs warning customers of wet floors in some areas of the store, although not in the vicinity of Mrs. Martin's fall. The store's roof had sometimes leaked in the past, but never in the health and beauty aids department. Mrs. Martin saw no evidence of a roof leak on the day of her fall, and she does not know how water got on the floor or how long it had been there before she fell.

Mrs. Martin and her husband sued Wal-Mart in the circuit court of Cocke County, Tennessee, alleging negligence. Wal-Mart removed the case to federal district court and moved for summary judgment. The thrust of Wal-Mart's argument was that there is no evidence the company had actual or constructive notice of water on the floor where Mrs. Martin fell.

The district court granted the motion for summary judgment, whereupon the Martins moved for reconsideration. The court denied this motion, finding that

"there is absolutely no proof in this case that the area where the plaintiff fell would be wet when it rained; no proof that there had been a past history of foreign liquids being spilled onto the defendant's floors in that area; no proof that there had been a past history of slip and fall accidents in that area; no proof that there was a history of roof leaks in that area; no proof that there were other sources of liquids in that area; and no proof in regard to the length of time that had lapsed before the fall between the cleaning of the store's floors and safety sweeps that were conducted by outside maintenance people."

The Martins filed a timely appeal.

II

Under Tennessee law an owner or operator of premises cannot be held liable for negligence in allowing a dangerous condition to exist on the premises unless (1) "the condition was caused or created by the owner, operator, or his agent," or (2) "the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). Here there is no evidence that Wal-Mart caused or created the accumulation of water on which Mrs. Martin slipped. Summary judgment was proper, therefore, unless the Martins established the existence of a triable issue as to actual or constructive notice.[1]

---

[1]Under *Blair*, a summary judgment movant's evidence must "affirmatively negate" an essential element of the non-movant's claim in order to trigger the non-movant's burden to present evidence establishing the existence of a triable issue as to that element. *Blair*, 130 S.W.2d at 768. There is no such requirement under Fed. R. Civ. P. 56, however, see *Pennycuff v. Fentress County Bd. of Edu.*, 404 F.3d 447, 450 (6th Cir. 2005), and it is the federal rule that governs summary judgment practice in diversity cases. See *Gafford v. General Electric Co.*, 997 F.2d 150, 165-66 (6th Cir. 1993).

A

The Martins suggest that actual notice can be inferred from the fact that Ms. Lethco took paper towels with her when responding to the report of a customer's fall. The suggestion is not persuasive. When asked why she had picked up the paper towels, Ms. Lethco testified as follows:

> "It's just — I don't know, sir. It's just a common thing, if you think anybody might be hurt or anything might be in the floor you always — I just automatically done it. I didn't think about it. I just did it."

This testimony, which stands unrebutted, is inconsistent with the proposition that Ms. Lethco knew about the accumulation of water prior to Mrs. Martin's fall. If the employee took the paper towels "automatically" on the assumption that something "might" be on the floor, then she did not take the towels purposefully with knowledge that something was in fact on the floor.[2]

There is no evidence that Ms. Lethco, who worked "around the corner" from the health and beauty aids department, had been in a position to notice the accumulation of water prior to the accident. The only relevant evidence suggests to the contrary: Ms. Lethco said it was her duty to clean up anything she saw on the floor of the store — and the record

---

[2]The Martins also suggest that "constructive knowledge of a spill being on the floor" can be inferred from Ms. Lethco's having grabbed a roll of paper towels after being notified of the accident. But an after-the-fact surmise that an accident might have been caused by a foreign substance on the floor can hardly be equated with constructive knowledge of the presence of such a substance before the accident.

contains nothing that would cause one to suspect that she neglected her duties. For this reason as well, we agree with the district court that actual notice cannot reasonably be inferred from Ms. Lethco's testimony.

B

There are two ways to prove constructive notice in Tennessee. The first is to show "that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition." *Blair*, 130 S.W.3d at 764. In the case at bar Mrs. Martin acknowledged that she did not know how long the floor had been wet before she slipped and fell. She presented no evidence that water had been on the floor for such a length of time that store employees should have been aware of it.

The second way to prove constructive notice is to show "a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence." *Id.* at 765-66. As we read the record, there is no evidence that water or other fluids had repeatedly dripped or spilled in the part of the store where Mrs. Martin fell.

The record indicates that the store's roof had never leaked in the health and beauty aids department. There is evidence that customers had slipped and fallen in other parts of the store, but there is no evidence that this had ever occurred in the vicinity of Mrs. Martin's fall. A history of leaks and spills in other departments could not have put Wal-Mart on notice of water accumulating in the health and beauty aids department.

Citing testimony of Ms. Lethco, the Martins contend that shopping carts were known to drip water throughout the store on rainy days. The testimony on which they rely is as follows:

"Q:    I want to know what you've actually cleaned up.

A:    Picked up things out of the floor like where people drop things or either like bags or something that would fall off in the floor and it's . . . Wal-Mart merchandise I picked up and I put it back on the peg. Or if there would be a water spot sometimes maybe when it rains and a buggy comes through my area, if there's water on that buggy I wipe it off.

Q:    Now, you wipe it off the floor?

A:    I wipe it off the buggy.

Q:    Off the buggy?

A:    I have carpet where . . . I first come into my area.

                *        *        *

Q:    Are there carts at your entrance?

A:    Very seldom do we ever have carts back there. I use a cart like when I'm putting up merchandise. But a customer may want to borrow my cart and I will give it to them.

Q:    Okay. But you wouldn't be using a wet cart because —

A:    Right.

Q:    But if a customer came back there with a wet cart you would wipe it off and dry it?

A:    Well, by that time it's going to be dripped all the way through the store.

Q:     Okay.  But if these carts are dried at the cart station where they're brought back they shouldn't be dripping throughout the store, should they?

A:     No, they shouldn't."

Ms. Lethco's reference to water dripping "all the way through the store" came in response to a hypothetical question about a customer bringing a wet cart into her area (*i.e.*, the lawn and garden department).  Her testimony supports the Martins' contention, therefore, only to the extent that wet carts were in fact brought through the store and into her area.

As we read the record, there is no evidence that customers brought wet carts into the lawn and garden department with any regularity.  To the contrary, the evidence indicates that carts ordinarily were dried before entering the store.  (There is also evidence that carpets and mats were placed at the store entrances, presumably to absorb water.)  Although Ms. Lethco's testimony establishes that a wet cart has sometimes entered her area, it does not support a finding that carts regularly dripped water throughout the store — including the health and beauty aids department.

The relevant question, under the Tennessee Supreme Court's decision in *Blair*, is "whether the condition occurs so often that the premises owner is put on constructive notice." *Blair*, 130 S.W.2d at 766.  In the case at bar there is no evidence of a "recurring incident" or "general or continuing condition" involving water on the floor in the part of the store where Mrs. Martin fell. *Id.* at 765.  There is thus no basis on which a reasonable jury could make a finding of constructive notice.

Wal-Mart is entitled to judgment as a matter of law, and the judgment entered by the district court is therefore **AFFIRMED**.