NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0334n.06
Filed: May 11, 2007

No. 06-5589

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

TAMMY RENNA BOWLING and TONY
BOWLING,

    Plaintiffs-Appellants,

v.

WAL-MART STORES, INC.,

    Defendant-Appellee.

                              /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

BEFORE:    SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

    **CLAY, Circuit Judge.**  Plaintiffs, Tammy Renna Bowling and Tony Bowling, appeal the

district court's grant of summary judgment to Defendant, Wal-Mart Stores, Inc., on their premises

liability claim. Specifically, Plaintiffs contend that the district court[1] erred in ruling on Defendant's

summary judgment motion before the time for discovery had passed, and that a genuine issue of

material fact remained on their premises liability claim. For the reasons that follow, we **AFFIRM**.

**BACKGROUND**

---

    [1]With the consent of the parties, this case was assigned to a magistrate judge for final
disposition. Throughout this opinion, we refer to the magistrate judge as "the district court."

No. 06-5589

This suit arose from a slip-and-fall at one of Defendant's Knoxville, Tennessee stores. On January 6, 2002, Plaintiffs were shopping at Defendant's store when Plaintiff Tammy Bowling slipped and fell on a puddle in the store's sporting goods section, which resulted from a leak in the store's ceiling. On January 6, 2003, Plaintiffs filed a premises liability suit against Defendant in Knox County Circuit Court. Defendant subsequently removed the matter to federal district court on the basis of diversity-of-citizenship jurisdiction.

Trial in this case was continued several times over. On April 15, 2004, the district court entered an order approving substitution of Plaintiffs' counsel. At that time, the parties mutually agreed to continue trial from May 10, 2004 to March 1, 2005, and the district court entered an order to that effect. On February 2, 2005, the parties brought a joint motion to continue, and the district court again entered an order continuing trial to August 16, 2005. Plaintiffs brought a second motion to continue on March 15, 2005, which the court granted, rescheduling the trial for November 29, 2005. On August 30, 2005, Plaintiffs again moved to continue trial, citing a need to complete medical depositions since Plaintiff Tammy Bowling's physician had not yet released her from treatment.

That same day, Defendant filed a motion for summary judgment. Plaintiffs requested an extension of time to respond, asserting a need to depose two of Defendant's employees, whose names and contact information they had yet to receive. The district court granted the request. Plaintiffs filed their response to Defendant's motion on October 24, 2005. On November 1, 2005, the court again continued trial to February 21, 2006; scheduled a pretrial conference for January 31,

2006; and directed the parties to complete discovery by January 31, 2006. The district court granted summary judgment to Defendant on December 28, 2005.

At the time the district court granted Defendant's motion for summary judgment, the evidence was as follows. Plaintiffs deposed Defendant's store manager, Scott Nickens ("Nickens"), and Nickens additionally submitted an affidavit in support of Defendant's motion for summary judgment. In his affidavit,[2] Nickens stated that Defendant did not construct the store building and did not own the building. Rather, he averred that Defendant leased the building and, by agreement, was obligated to pay for repairs to the building's roof. Nickens indicated that an investigation following Plaintiff Tammy Bowling's fall "revealed that, earlier in the day, it had begun to snow, and that, shortly before [her] accident, a leak had developed in the roof over the sporting goods department." (J.A. at 29-30) Nickens stated that Defendant's employees did not know of the leak before Plaintiff's fall. With respect to other occurrences, Nickens averred that a leak near the store's cash registers – an entirely different part of the store – was identified on November 30, 2001 and quickly repaired.

The parties also deposed Davey Eugene Hammond ("Hammond"), the manager of the sporting goods department at Defendant's store. At his deposition, Hammond testified that Defendant trained its employees to conduct safety sweeps and, if they encountered a spill or otherwise hazardous condition, "to remain with the spill or turn over the object or whatever the hazard may be, remain with it, and get another associate to go get the things to clean it up whether

---

[2]That portion of Nickens' deposition contained in the record consists of only one page and neither harms nor advances Plaintiffs' claim.

it'd be putting up caution cones, mop, whatever." (J.A. at 67) According to Hammond, "[s]omeone stayed with the spill at all times, as soon as we noticed it." (*Id*.) Hammond testified that the sporting goods department spanned six or seven aisles at the time of the spill and that two employees would typically be on the floor in the department, except during their break times. One of the sporting goods employees was required to remain near the guns and ammunition counter at all times and, thus, was more restricted in his ability to scan and straighten the aisles.

The incident in question occurred on a Sunday night. During his deposition, Hammond testified that on some Sunday nights, fewer than two people worked in the sporting goods department. The accident report did not indicate, and Hammond could not remember, which sporting goods employees were working during the second shift on January 6, 2002. The employees named on the accident report were Kathy Redmond ("Redmond"), a stocker, and Angela Hodsden ("Hodsden"), an assistant manager. Hammond indicated that the roof over the sporting goods department had never leaked before. He described the leak with reference to photos taken as a part of the accident report. By Hammond's account, the water leaked down onto a counter in the camouflage aisle and then ran down to the floor.

A work order dated January 8, 2002 reflects a leak in the roof reported in the domestics and crafts section of the store. The record additionally contains a pre-construction document setting forth Defendant's asphalt roof specifications.

Plaintiff Tammy Bowling also gave her deposition. She testified that she and her husband had finished shopping, and that she went to check out while he left the store to get the car. Before checking out, Plaintiff recalled that her husband wanted arrows and went back to the sporting goods

4

section to find them. After retrieving the arrows, she walked down another aisle back towards the cash registers, at which time she slipped in the water. Plaintiff indicated there was "[a] pretty good bunch of water" on the ground – enough to leave her "jeans and shirt and hair . . . wet." (J.A. at 83) She estimated the puddle spanned two or three feet in diameter. Plaintiff fell "almost completely flat on [her] back, [with] the majority of [her] weight on [her] left hip." (*Id*. at 84) Plaintiff testified that a fellow customer responded, having heard her fall, and made her lie still on the floor. On the basis of this evidence, the district court granted summary judgment.

After the district court granted summary judgment, Plaintiffs filed a motion to alter the judgment pursuant to Federal Rule of Civil Procedure 59(e). In support of the motion, Plaintiffs attached several exhibits not previously filed with the court, including a transcript from Plaintiffs' November 16, 2005 deposition of Theresa Earline Bailey ("Bailey"). Defendant identified Bailey as one employee who worked in its sporting goods department on the date in question. Bailey testified that her work in sporting goods entailed selling licenses, putting freight out, and other customer service-related tasks. When asked about her training for the sporting goods position, Bailey replied that "[n]othing in particular" had been required, but that she "learn[ed] how to read bar codes and put stuff where it goes." (J.A. at 135) When asked about training more generally, she replied, "When you go to work there, we go through what they call computer based learning. And it's all the ins and outs of what's expected of you, money handling, HAZMAT, and, of course, in my department, we're specialized." (*Id*. at 136) However, Bailey subsequently clarified that computer training was a new phenomenon and she had only completed computer training "in the last three to four years." (*Id.*)

Bailey testified that, even before the onset of computer training, Defendant taught its associates to pick up errant objects in the aisles, to clean spills up, and where water had been spilt, to "put down a cone and . . . stand with the spot until [they] get somebody to come over and . . . clean it up." (J.A. at 136) She stated that associates check their respective departments "[e]very time [they're] going through," but that sporting goods associates do so less frequently because one employee must remain near the guns and ammunition. (*Id*. at 137) Bailey further indicated that Defendant's employees now conduct scheduled "safety sweeps," but that such sweeps typically occur only twice in an eight-hour period. Bailey could not recall whether she actually worked on January 6, 2002 at the time Plaintiff Tammy Bowling fell, could not recall hearing that a customer had slipped in the sporting goods department, did not remember that the roof in sporting goods sprung a leak, and did not recall seeing the cones and buckets placed in the aisle to catch the dripping water after Plaintiff's fall. Bailey did recall, however, that in 1994 when the building was being remodeled, the roof over what eventually became the sporting goods department leaked enough that she had to "put coolers up [near the roof] to gather the water in and . . . run siphon hoses down to . . . big barrels because [she] couldn't get up and down the ladders carrying the water to keep it emptied." (*Id*. at 141)

Also in support of their Rule 59(e) motion, Plaintiffs attached Defendant's Response to Plaintiffs' Interrogatories, which Plaintiffs had in their possession since February 2005. Therein, Defendant avers that it "first became aware of the subject leak on January 6, 2002, after the plaintiff reported that she had slipped and fell in water on the floor." (J.A. at 150) Defendant further acknowledged finding a leak near the check out counters on November 30, 2001. The district court

conducted a hearing on February 17, 2006 on Plaintiffs' Motion to Alter Judgment under Rule 59(e).

On March 29, 2006, the court issued an order denying that motion. Plaintiffs timely appealed.

## DISCUSSION

I. **WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN ENTERING SUMMARY JUDGMENT BEFORE THE SCHEDULED PRETRIAL CONFERENCE.**

### A. Standard of Review

Although this case arises in diversity and Tennessee substantive law applies, the Federal Rules of Civil Procedure and federal standards govern our review of the district court's grant of summary judgment. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165-66 (6th Cir. 1993) (citing *Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable & Cold Storage Co.*, 709 F.2d 427, 430 n.3 (6th Cir. 1983)). We review for abuse of discretion a district court's entry of summary judgment where the non-movant claims that he required additional time to adequately complete discovery. *Vance v. United States*, 90 F.3d 1145, 1149 (6th Cir. 1996) (citing *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231-32 (6th Cir. 1994)).

### B. Timing of the District Court's Summary Judgment Grant

Plaintiffs first contend that the district court erred in granting summary judgment prior to the discovery cut-off date purportedly established under a pretrial order. We hold that the district court did not abuse its discretion.

Initially, we note that the record reflects some confusion over the district court's anticipated schedule for ruling on Defendant's summary judgment motion. On November 1, 2005, the district court held a conference call with the parties to resolve Plaintiffs' pending motion to continue. During that call, the district court granted the motion and rescheduled trial. According to the court's

minutes, the parties were "to complete the following before the Pretrial Conference on January 30 [sic], 2006: doctor's rating, depositions, discovery, and mediation." (J.A. at 85) The district court's subsequent order similarly states that the court expected the "parties to complete all discovery . . . by the time of the pretrial conference." (*Id*. at 98) Yet, the district court's December 28, 2005 order granting summary judgment reflects a slightly different version of events. There, the district court recounted:

> . . . [T]he plaintiffs request that the Court reserve ruling on the motion until the defendant has produced certain documents and the names of certain witnesses so that the plaintiffs may supplement their response. . . . In a telephone conference on November 1, 2005, the parties indicated that the plaintiffs had received the names of these witnesses, and *the Court advised the plaintiffs' attorney that he had thirty days to complete discovery*. Thirty days have now passed, plus an additional ten days, during which no supplemental brief or response has been filed. Accordingly, the Court finds it is timely to rule on the defendant's motion for summary judgment.

*Bowling v. Wal-Mart Stores, Inc.*, No. 3:03-CV-367, 2005 WL 3560647, at *1 (E.D. Tenn. Dec. 28, 2005) (unpublished) (hereinafter "*Bowling I*") (emphasis added). Notwithstanding this apparent confusion, the district court's order denying Plaintiffs' Rule 59(e) motion reflects that Plaintiffs "conceded that the Court had the right to rule on the summary judgment motion prior to the pretrial conference" during the February 2006 hearing on that motion. *Bowling v. Wal-Mart Stores, Inc.*, No. 3:03-CV-367, 2006 WL 840410, at *2 (E.D. Tenn. Mar. 29, 2006) (unpublished) (hereinafter "*Bowling II*").

Even assuming Plaintiffs had not conceded the issue, we find no abuse of discretion in the district court's decision to rule on Defendant's summary judgment motion at that juncture. "[D]istrict courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her

evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Because "the scope of discovery is within the sound discretion of the trial court," the non-movant has "no absolute right to additional time for discovery." *Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir. 1989) (citations omitted). Nevertheless, the district court must afford the non-movant a "sufficient opportunity for discovery." *Vance*, 90 F.3d at 1148 (citing *White's Landing Fisheries, Inc.*, 29 F.3d at 231-32); *see also Celotex*, 477 U.S. at 322-23 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion.") (emphasis added); *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002) (citations omitted).

Plaintiffs preserved the argument that the district court granted summary judgment too soon by filing a motion for continuance in September 2005, and by requesting additional time for discovery in their response to Defendant's motion for summary judgment. We review Plaintiffs' claim that the district court abused its discretion by granting summary judgment before discovery was complete under the five factor inquiry announced in *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196-97 (6th Cir. 1995) (citations omitted). Under *Plott*, we consider:

> (1) when the appellant learned of the issue that is the subject of the desired discovery,
> (2) whether the desired discovery would have changed the ruling below,
> (3) how long the discovery period had lasted,
> (4) whether the appellant was dilatory in its discovery efforts, and
> (5) whether the appellee was responsive to discovery requests.

*Plott*, 71 F.3d at 1196-97 (internal citations omitted).

Here, Plaintiffs sought additional time to depose the two employees who worked in Defendant's sporting goods department on the date of Plaintiff Tammy Bowling's fall. Plaintiffs undoubtedly knew early on that they wanted to depose these employees on the subjects of their work

on the days in question and their floor sweeps more generally. The first factor cuts against Plaintiffs.

As to the second factor, Plaintiffs did not, or could not, show that additional discovery would alter the district court's summary judgment decision. *Cf. E. Ky. Cardiothoracic Surgery v. Ashland Hosp. Corp.*, 119 F. App'x 715, 717 (6th Cir. 2004) (unpublished). Defendant identified Bailey and John Crowley ("Crowley") as the two employees that worked in the sporting goods department on the date of Plaintiff's accident. Bailey's deposition occurred on November 16, 2005 and Plaintiffs make no attempt to explain their failure to file the deposition more promptly, especially since they had already filed their response to Defendant's summary judgment motion. At any rate, the district court granted summary judgment because Plaintiffs could not show that Defendant had actual or constructive notice of the puddle of water. The Bailey deposition does not establish notice.[3] For the most part, her testimony was cumulative of the sporting goods department manager's testimony and, in fact, she could not recall having worked on the day in question or that an accident occurred in her department. The second employee, Crowley, could not be located for a deposition. Plaintiffs "must, at a minimum, be able to show that [they] could obtain information through discovery that would disclose material facts." *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997). This, they cannot do.

Third, in the instant case, Plaintiffs had more than ample time to conduct searching and meaningful discovery. The district court willingly and generously permitted the parties to continue trial in this matter. In fact, the district court continued trial a total of nearly twenty-two months, from

---

[3]In her deposition testimony, Bailey stated that the roof over the then-sporting goods department had leaked during remodeling of the building in 1994. However, nothing in the record indicates that it continued leaking after the completion of remodeling work.

an initial date of May 10, 2004 to February 21, 2006. Following several continuances, the district court additionally granted Plaintiffs' September 28, 2005 request for extension of time to respond to Defendant's motion for summary judgment. Therein, Plaintiffs cited a need to depose two of Defendant's employees, whose names and contact information Plaintiffs had apparently requested from Defendant. At that point, discovery had been ongoing for at least seventeen months. Fourth, Plaintiffs apparently did not pursue discovery diligently inasmuch as they required additional time notwithstanding twenty-two months worth of continuances. Finally, Plaintiffs point to nothing in the record to show that Defendant did not timely respond to its discovery requests.

In their brief on appeal, Plaintiffs cite *Grisham v. McLaughlin*, an unpublished Tennessee state case, to emphasize "the importance of allowing for discovery to be completed before a trial court rules on a motion for summary judgment." (Pl.'s Br. at 15) First, as an unpublished state court case, it does not bear on our inquiry under the Federal Rules of Civil Procedure. Second, *Grisham* is easily distinguishable from the instant case. In *Grisham*, the plaintiff filed a medical malpractice suit against her physician, who then moved for summary judgment *three and one-half months later*. *Grisham v. McLaughlin*, No. M2004-01662-COA-R3-CV, 2006 WL 1627274, at *2 (Tenn. Ct. App. June 12, 2006) (unpublished) (emphasis added). The plaintiff filed a motion to continue in order to depose the physician and respond properly to his summary judgment motion. *Id*. The physician initially failed to respond to plaintiff's requests for a deposition. *Id*. When the physician was finally deposed, he refused to waive signature. *Id*. at *3. The day after his deposition, the physician filed a motion to dispose of his pending summary judgment motion and the court scheduled a hearing on the motion to occur fifteen days later. *Id*. By the hearing date, the plaintiff still had not received a

copy of the physician's deposition and, thus, had no opportunity to obtain expert review. *Id*. The court disregarded the plaintiff's objections to the hearing and granted summary judgment to the physician less than a week later. *Id*.

Unlike *Grisham*, this is simply not a case where the district court prematurely ruled on summary judgment. Plaintiffs had more than ample time to conduct adequate discovery in this case, totaling over seventeen months. Plaintiffs had deposed Defendant's store manager and the sporting goods department manager, and had received some documentary evidence (the roof specifications and a work order for a leak elsewhere in the roof) as well as responses to interrogatories from Defendant. On November 16, 2005, Plaintiffs deposed Bailey, the employee in Defendant's sporting goods department, but Plaintiffs failed to file Bailey's deposition before the district court entered summary judgment *over a month later*. At any rate, that deposition does little to save Plaintiffs' case. All in all, the district court's decision to rule on Defendant's summary judgment motion in December 2005 ran consistent with a "principal purpose[] of the summary judgment rule . . . to isolate and dispose of factually unsupported claims or defenses." *See Celotex*, 477 U.S. at 323-24.

Consequently, we hold that the district court did not abuse its discretion in ruling on the summary judgment motion before the scheduled pre-trial conference, as Plaintiffs had more than an adequate opportunity to conduct discovery in this case. *Compare Vance*, 90 F.3d at 1147 (finding the district court abused its discretion when it entered summary judgment three months after the plaintiff filed his complaint and before any discovery), *with E. Ky. Cardiothoracic Surgery*, 119 F. App'x at 717 (no abuse where district court denied Rule 56(f) motion after fourteen month discovery period wherein plaintiff conducted only one deposition).

## II. WHETHER THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT ON PLAINTIFFS' PREMISES LIABILITY CLAIM.

### A. Standard of Review

We review *de novo* a district court's grant of summary judgment. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 933-34 (6th Cir. 2000) (citing *EEOC v. Northwest Airlines, Inc.*, 188 F.3d 695, 701 (6th Cir. 1999)). Summary judgment is appropriate where there exist no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, we credit all evidence submitted by the non-moving party. *Celotex*, 477 U.S. at 323. Additionally, we draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Plaintiffs' Premises Liability Claim

The district court granted summary judgment having found no evidence either "that Wal-Mart caused or created the puddle of water in which Ms. Bowling fell," *Bowling I*, 2005 WL 3560647, at *3, or that Defendant had actual or constructive notice of the problem. Specifically, the district court found nothing to indicate "how long the water had been leaking," that Defendant's employees had neglected to make regular inspections, or that such leaks recurred with sufficient frequency to place Defendant on constructive notice of the existence of the puddle. *Id*. We hold that the district court properly granted summary judgment to Defendant on Plaintiffs' premises liability claim.

Tennessee's substantive law of negligence applies to Plaintiffs' claim. In Tennessee, to succeed on a suit in negligence, the plaintiff must show (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty of care; (3) the plaintiff suffered some injury or loss;

13

(4) cause in fact; and (5) proximate cause. *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn. 1996). Additionally, to hold an owner or operator of premises liable in negligence for a dangerous or defective condition on its premises, the plaintiff must show either (1) that the premises owner or operator caused the condition, or (2) if not, "that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004) (citing *Martin v. Washmaster Auto Ctr., U.S.A.*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996)); *see also Martin v. Wal-Mart Stores, Inc.*, 159 F. App'x 626, 627-28 (6th Cir. 2005) (unpublished).

"[C]onstructive notice can be established by proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition." *Blair*, 130 S.W.3d at 764 (citing *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986)); *see also Washmaster Auto Ctr.*, 946 S.W.2d at 318. Additionally, a plaintiff can prove constructive notice through "a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence." *Blair*, 130 S.W.3d at 765-66; *see also Washmaster Auto Ctr.*, 946 S.W.2d at 320. The recurring conduct or continuing condition must be specific to the location where the incident at issue occurred. That is, notice of a general or continuing condition in one area of the premises does not necessarily support a finding of constructive notice as to another area. *See Blair*, 130 S.W.3d at 767; *Martin*, 159 F. App'x at 629-30; *Tinsley v. Wal-Mart Stores, Inc.*, 155 F. App'x 196, 198 (6th Cir. 2005) (unpublished).

The district court correctly found that no genuine issue of material fact existed as to whether Defendant caused the condition, or alternatively, whether Defendant had actual or constructive notice of the dangerous condition. There is no evidence in the record to support a finding that Defendant caused the condition or had actual notice of the condition. Plaintiffs could therefore survive summary judgment only if record evidence, construed in their favor, demonstrated constructive knowledge.

The record does not support a finding that the leak in Defendant's sporting goods department "existed for such a length of time that [Defendant], in the exercise of reasonable care, should have become aware of the condition." *See Blair*, 130 S.W.3d at 764; *Washmaster Auto Ctr.*, 946 S.W.2d at 318. Plaintiff Tammy Bowling testified that the water from the leak was "[a] pretty good bunch of water" on the ground which left her "jeans and shirt and hair . . . wet." (J.A. at 83) Plaintiff estimated the puddle was two to three feet wide at the time of her fall. Plaintiffs rely on the amount of water to raise an inference that it had been on the floor long enough to be discovered by Defendant. As the district court properly observed, however, "[t]he mere existence of a two-foot to three-foot wide puddle does not indicate that a particular amount of time has passed; the puddle could have been created over the period of ten hours or ten seconds." *Bowling I*, 2005 WL 3560647, at *3. Plaintiffs baldly assert that Defendant "failed to follow its own procedures to safety check for hazards." (Pl.'s Br. at 18) Defendant does not dispute that its employees were trained to conduct safety sweeps and to promptly address potentially dangerous conditions. Yet, we find nothing to indicate that Defendant's employees were not following these procedures on the day in question.

15

We cannot say that Defendant failed to exercise reasonable care inasmuch as the record does not establish how long the roof had been leaking and, correspondingly, how long the puddle existed.

Neither does the record reflect "a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence" such that Defendant would be put on notice of the leak in the sporting goods department. *See Blair*, 130 S.W.3d at 765-66; *Washmaster Auto Ctr.*, 946 S.W.2d at 320. This case is not unlike *Martin v. Wal-Mart Stores*, another Tennessee diversity suit that came before this Court. In *Martin*, the plaintiff slipped and fell in Wal-Mart's health and beauty aids department on what appeared to be water. *Martin*, 159 F. App'x at 627. As a result of rain earlier that day, the floors were wet in certain parts of the store. *Id*. Additionally, the store's roof had leaked in the past, but it had never leaked in the health and beauty aids department. *Id*. On the question of constructive notice, the *Martin* court found that "[a] history of leaks and spills in other departments could not have put Wal-Mart on notice of water accumulating in the health and beauty aids department." *Id*. at 629. Additionally, although customers occasionally brought wet shopping carts into the department, this did not occur regularly enough "*in the part of the store where [the plaintiff] fell*" to put Wal-Mart on constructive notice of a dangerous condition. *Id*. at 629-30 (emphasis added).

Here, leaks had occurred in other parts of Defendant's store on previous occasions – including a leak above the cash registers identified on November 30, 2001 and one above domestics and crafts on January 8, 2002. However, the roof over the sporting goods department had never

leaked before.[4] Although Plaintiffs find it significant that the roof warranty had expired, even taken together with evidence of a leak in two other parts of Defendant's store, the expired warranty does not show a "general or continuing condition" sufficient to put Defendant on constructive notice of the likelihood that its customers would suffer injury. Accordingly, we affirm the district court's grant of summary judgment inasmuch as Plaintiffs cannot establish actual or constructive notice of the leak, or that Defendant somehow caused the dangerous condition.[5]

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order.

---

[4]Bailey, in her deposition, testified that the roof over what later became the sporting goods department leaked significantly in 1994 while the store underwent renovations. Notwithstanding sufficient time to do so, Plaintiffs failed to file the Bailey deposition before the district court entered summary judgment. Additionally, nothing in the record indicates that the roof leaked in that location *after* renovations had been completed.

[5]To the extent that Plaintiffs challenge the district court's ruling on their Rule 59 motion, we find the district court did not abuse its discretion in denying that motion. First, Plaintiffs' Rule 59 motion was "premised on evidence that [Plaintiffs] had in [their] control prior to the original entry of judgment." *See Emmons*, 874 F.2d at 358 (citations omitted). In fact, Plaintiffs had two of these documents in their control when they responded to Defendant's motion for summary judgment on October 24, 2005. What is more, the additional documentary evidence attached to Plaintiffs' Rule 59(e) motion did little to create a genuine issue of material fact.

17