NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0497n.06

Case No. 25-5139

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 24, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| PATRICK PENN & ALICE PENN, | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| WILDERNESS DEVELOPMENT | ) | TENNESSEE |
| CORPORATION, | ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) | |

Before: COLE, KETHLEDGE, and NALBANDIAN, Circuit Judges.

**NALBANDIAN, Circuit Judge.** While at a Tennessee waterpark, Alice Penn noticed two pieces of broken glass near a pool that her husband Patrick had just entered. She quickly threw the pieces away and joined her husband. Around twenty minutes later, they both left the pool. And sometime after that, Alice noticed that—to Patrick's surprise—his foot was bleeding from a cut. Unfortunately, issues from the cut lingered for weeks.

So the Penns sued the owner of the waterpark, Wilderness Development Corporation, for negligence under a premises liability theory. Wilderness moved for summary judgment, which the district court granted. Because we conclude that the broken glass in the waterpark wasn't reasonably foreseeable and the Penns lacked evidence suggesting that Wilderness caused the broken glass to be there, we AFFIRM.

## I.

## A.

Wilderness Development Corporation owns and operates Soaky Mountain Waterpark in Sevierville, Tennessee. Because Wilderness considers broken glass a waterpark's "kryptonite," it has adopted a layered strategy to stop glass from becoming a hazard for its often-barefoot visitors. R.41-5, Dep. of Marc Playman, PageID 411.

As its frontline defense against glass, the waterpark prohibits glass items—except for some common items, like eyeglasses and cellphones—from entering the park. It enforces that prohibition by posting signs at the entrance and checking park-goers' bags before they enter. The waterpark's employees also arrive around two hours before opening to sweep the entire area of the park, looking for litter and debris to dispose of and recording anything they discarded on a checklist. And they do the same after closing. On the day of Patrick's injury, eight lead lifeguards were spread around the park keeping the area clean and safe. But unlike at opening and closing, the lifeguards don't use a checklist to note items they've discarded.

Waterpark employees have found broken glass inside the park only once. And no guest has ever reported broken glass to an employee.

But the waterpark's nearly unblemished record took a blow during summer 2021. Patrick and Alice Penn, husband and wife, took a Sunday visit to the waterpark with their grandkids. Shortly after Patrick entered the waterpark's wave pool, Alice noticed two pieces of clear, broken glass on the floor a few feet from the pool. She described the pieces as one-inch in size and thick, as if from the bottom of a glass bottle. She didn't see any blood on the glass, but she scanned the area for any other pieces and to make sure nobody had been hurt. Seeing nothing else concerning, she then threw the glass into the trash and joined her husband in the pool. Apparently, nobody

else saw any broken glass that day, nor did Alice see any more pieces after discarding what she had seen.

Alice spent around twenty minutes in the wave pool, then she and Patrick got out. After sitting for "a while," they stood up to go somewhere else in the park, and Alice noticed blood on the ground where Patrick had just stepped. R.38-1, Dep. of Alice Penn, PageID 299. She lifted his foot and saw a cut. Because Patrick has numbness in his feet from diabetes, Patrick hadn't realized he'd been cut. And nobody saw Patrick step on glass or anything else that may have caused the cut.

Issues arising from the cut lingered in the weeks after and led to several hospital visits. Patrick's primary care physician, who was treating the worsening symptoms from the cut, opined that the wound appeared "consistent with what one would expect for a cut or laceration caused by broken glass." R.41-3, Aff. of Scott Gallian, PageID 394. Meanwhile, Wilderness didn't learn about Patrick's injury until the Penns' attorney contacted it a month later. But at that point, Wilderness no longer had any relevant surveillance video.

**B.**

The Penns brought a negligence action against Wilderness under a premises liability theory. They alleged that Wilderness's negligent maintenance of the waterpark caused Patrick's injury. During discovery, the Penns' expert, Dr. Osinski, testified that the industry standard for a high-traffic waterpark is to have employees covering the area once every ten minutes to look for hazards.

Wilderness moved for summary judgment, arguing that the Penns couldn't prevail as a matter of law on the duty of care and causation elements of their claim. Addressing only the duty of care, the district court granted Wilderness's motion. It found that there was no genuine dispute

of material fact on whether Wilderness caused or created the broken glass and on whether Wilderness had constructive notice of the glass. The Penns appealed.

## II.

## A.

We review a district court's summary-judgment grant de novo. *Blanchet v. Charter Commc'ns, LLC*, 27 F.4th 1221, 1226 (6th Cir. 2022). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

When deciding on a defendant's summary-judgment motion, the court must accept as true the plaintiff's evidence and draw all reasonable inferences from the evidence in the plaintiff's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In doing so, the court must not weigh the evidence or make credibility determinations. *Id.* But even with that thumb on the scale, the record must show a genuine dispute of material fact for the plaintiff's claims to survive. *Id.* at 256–57. And a dispute is only "genuine" if, based on the quantity and quality of evidence, a reasonable jury could find that the plaintiff proved his case by a preponderance of the evidence, or whatever the evidentiary standard in the case is. *Id.* at 254.

## B.

The dispute here is whether the district court correctly found that no reasonable jury could conclude that Wilderness owed the Penns a duty of care under Tennessee premises liability law. The issues are: (1) whether there's a genuine issue of material fact as to Wilderness causing or creating the broken glass; and (2) whether there's a genuine issue of material fact as to Wilderness

having constructive notice of the broken glass as a reasonably foreseeable "general condition."[1]

And because this is a diversity case, we apply the substantive law of Tennessee. 28 U.S.C. § 1652;

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

**III.**

In Tennessee, to establish a prima facie case for negligence, "the plaintiff must prove (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant that was below the standard of care, amounting to a breach of a duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation." *Trentham v. Mid-Am. Apartments, LP*, 705 S.W.3d 151, 160 (Tenn. 2025) (quoting *Williams v. Linkscorp Tenn. Six, L.L.C.*, 212 S.W.3d 293, 296 (Tenn. Ct. App. 2006)). To show that a property owner owed him a duty of care, the plaintiff has two options based on whether he alleges the owner caused the dangerous condition or someone or something else caused it. The plaintiff must prove either that "(1) the condition was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Id.* at 160 (citation modified) (quoting *Blair v. W. Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004)).

The Penns assert that genuine issues of material fact existed as to both methods of establishing a duty of care. We disagree.

---

[1] The Penns also assert that the district court improperly discounted the deposition testimony of their expert witness, Dr. Osinski. But because our analysis won't turn on anything within the scope of Dr. Osinski's testimony, it's unnecessary to address this argument.

**A.**

Under the first method, a plaintiff can establish a duty of care by proving that "the condition was caused or created by the owner, operator, or his agent." *Blair*, 130 S.W.3d at 764. This method doesn't apply if a third party created the dangerous condition. *Id.* at 764, 766.

Here, no reasonable jury could find that Wilderness "caused or created" the dangerous condition. As the Penns conceded before the district court, "there is no evidence indicating exactly how long the glass was in/around the pool deck area." R.45, Pls.' Opp'n to Def.'s Mot. for Summ. J., PageID 451. Alice couldn't say what caused the broken glass to be on the ground nor how long it had been there. And nobody else, including Patrick, ever saw the glass. In other words, there's no evidence hinting at how the glass got there. So there's no evidence that Wilderness caused it to be there. Because "the jury may not speculate as to the cause of the plaintiff's [injury] when one is not shown," the Penns haven't presented a triable issue of fact. *Martin v. Washmaster Auto Ctr., U.S.A.*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996).

Recognizing that there's no evidence directly tying Wilderness to the glass, the Penns try a different tactic. They contend that a property owner can cause or create a dangerous condition by negligently maintaining facilities. For this, they rely on *Wolfe v. Felts*, No. W2013-01995-COA-R3-CV, 2014 WL 2462885 (Tenn. Ct. App. May 29, 2014).

There are two problems with this argument. First, to the extent that the Penns are suggesting that an owner, through inaction, can somehow cause or create a dangerous condition that can be traced to a third party, or perhaps nature, that argument is inconsistent with what the Tennessee Supreme Court held in *Blair* and *Trentham*.

In *Blair*, the question was whether a mall owner was liable for failing to maintain its parking lot, which was slippery because of slick oil spots caused by buses. 130 S.W.3d at 762–

63. The Court rejected "the idea that the premises owner's method of operating the business indirectly resulted in creation of the dangerous condition" when third parties contributed to its creation. *Id.* at 764–65. Instead, it held that the issue was whether the slick oil spots "occur[red] so often that the premises owner [was] put on constructive notice of [their] existence." *Id.* at 766. In other words, when a plaintiff claims that a defendant indirectly caused a dangerous condition by negligent maintenance, the appropriate theory for establishing duty of care is actual or constructive notice. And in *Trentham*, the question was whether the owner of a pedestrian bridge was liable for failing to prevent a fungal growth from accumulating and making the bridge slick. 705 S.W.3d at 156. Again, the Court examined the existence of the owner's duty of care under the rubric of constructive notice—not whether the owner negligently caused the condition. *Id.* at 160–61. So here, the Penns' argument that Wilderness caused the dangerous condition by inaction isn't an option.

Second, the Penns' argument would still fail under *Wolfe*'s broader view of causation or creation. Even in *Wolfe*, the court acknowledged that when "there is a complete absence of proof as to when and how the dangerous condition came about, it would be improper to permit the jury to speculate on these vital elements." 2014 WL 2462885, at *4 (quoting *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45, 47 (Tenn. Ct. App. 1995)). Here, the Penns have no evidence suggesting when or how the broken glass got there. So the jury would be left to speculate on whether proper maintenance would've prevented the glass's presence when Patrick was injured.

Because the Penns' evidence failed to create a triable issue on whether Wilderness caused the glass to be there, summary judgment was proper.

**B.**

Now we turn to whether summary judgment was proper as to the second method of establishing a duty of care. *Blair*, 130 S.W.3d at 764 (requiring that "if the condition was created by someone other than the owner, operator, or his agent," the plaintiff must prove "that the owner or operator had actual or constructive notice that the condition existed prior to the accident"). The Penns don't claim that Wilderness had actual notice of the glass, so we need only address constructive notice.

Constructive notice is "information or knowledge of a fact imputed by law to a person . . . because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Trentham*, 705 S.W.3d at 162 (citation omitted). A plaintiff can prove constructive notice by showing "that the dangerous condition was part of 'a pattern of conduct, a recurring incident, or a general or continuing condition' such that its presence was reasonably foreseeable to the premises owner."[2] *Blair*, 130 S.W.3d at 766. In other words, it takes more than a random or unexpected occurrence to establish constructive notice. *Trentham*, 705 S.W.3d at 160, 165. And constructive notice of a dangerous condition in one location doesn't necessarily indicate constructive notice of that same condition in a different location. *E.g.*, *Tinsley v. Wal-Mart Stores, Inc.*, 155 F. App'x 196, 198 (6th Cir. 2005) ("Under *Blair* the specific location of the recurring dangerous condition or common occurrence is critical to determining constructive notice of that condition.").

---

[2] A plaintiff can also establish constructive notice by presenting "proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition." *Blair*, 130 S.W.3d at 764. But the Penns don't try to establish constructive notice this way.

Here, the Penns argue that Wilderness had constructive notice because broken glass in the waterpark was a reasonably foreseeable "general condition." But because we agree with the district court's conclusion that the broken glass wasn't reasonably foreseeable, we don't need to answer whether the glass constituted a general condition.

No jury could reasonably infer that broken glass in the park was reasonably foreseeable. Wilderness prohibited nearly all glass items from entering the park, and it enforced that prohibition by posting signs and checking bags at the entrance. It also inspected the entire park for debris before opening each day. Illustrating the effectiveness of these efforts, a Wilderness employee has found broken glass in the park only once. The Penns don't present any evidence to create a genuine dispute regarding Wilderness's preventive measures. So as far as we know, the broken glass found in the park was an isolated or random event—not a reasonably foreseeable one.

In addition, the foreseeability of a dangerous condition depends not just on the hazard itself but also on its location. So even if it was foreseeable that visitors would have glass items with them at the entrance to the park, it wasn't reasonably foreseeable that glass would make it into the park considering Wilderness's preventive steps at the entrance.

For instance, in *Katz*, a Tennessee court affirmed the grant of summary judgment for the defendant in a case where the plaintiff had slipped and fallen in a pool of liquid while attending a concert. *Katz v. Sports Auth. of Metro. Gov't of Nash. & Davidson Cnty.*, No. M2016-01874-COA-R3-CV, 2017 WL 3741346, at *1, 6 (Tenn. Ct. App. Aug. 29, 2017). Even though 33 spills had occurred throughout the arena before the plaintiff's fall, only two spills had occurred near where the plaintiff fell. *Id.* at *5. Noting that its inquiry was limited to "whether the dangerous condition in the area where plaintiff fell was part of a pattern of conduct, a recurring incident, or a general or continuing condition," the court concluded that the plaintiff couldn't establish the

defendant's constructive notice of a dangerous condition where the plaintiff fell. *Id.* at *5 (citation modified) (quoting *Blair*, 130 S.W.3d at 767). And we've consistently followed the same approach when applying Tennessee law. *See Bowling v. Wal-Mart Stores, Inc.*, 233 F. App'x 460, 467–69 (6th Cir. 2007); *Tinsley*, 155 F. App'x at 198; *Martin v. Wal-Mart Stores, Inc.*, 159 F. App'x 626, 629–30 (6th Cir. 2005).

To be clear, we aren't analyzing whether Wilderness breached its duty of care, but whether it had one in the first place. So Dr. Osinski's testimony about the industry's standard of care for park inspections, which the Penns emphasize, isn't relevant to our analysis. Based on Wilderness's consistently effective efforts to prevent glass from entering the park—regardless of whether those efforts and the efforts to clean up debris in the park satisfied the standard of care—broken glass in the park wasn't a reasonably foreseeable condition; it was an isolated occurrence. And the Penns haven't presented evidence that would allow a jury to reasonably infer otherwise.

The Penns make several arguments to support their position that Wilderness had constructive notice of the broken glass. All fail. First, the Penns point out that when proving constructive notice, plaintiffs aren't required to point to prior incidents or to establish the duration of time the dangerous condition existed. They're correct. *Trentham*, 705 S.W.3d at 163, 165. But this doesn't lead to the conclusion the Penns want. Sure, a general or continuing condition need not be one that has occurred in the past, but it must still be reasonably foreseeable. *Blair*, 130 S.W.3d at 766. So even though the Penns are relieved of the burden of showing prior incidents or how long the broken glass had been there, they still must show that broken glass in the park was reasonably foreseeable. And as we've already discussed, the Penns fail on that front.

Second, the Penns argue that Wilderness had a duty of care because the potential harm from broken glass outweighs the burden Wilderness would assume in preventing it. In Tennessee,

"foreseeability alone does not establish the existence of a duty." *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 904 (Tenn. 1996). "[T]he magnitude of the potential harm and the burden imposed upon defendants must also be weighed to determine the existence of a duty." *Id.* So foreseeability, though not sufficient to establish a duty of care, is still necessary—otherwise, the defendants would lack constructive notice. *Trentham*, 705 S.W.3d at 166. Because we disagree with the Penns' claim that the broken glass was reasonably foreseeable, we don't need to weigh harm and burden.

Finally, the Penns argue that if we affirm, then we'll be affirming Wilderness's ability to cut corners on safety. But the only reason broken glass in the park wasn't reasonably foreseeable was because of Wilderness's preventive measures. If those measures hadn't been so effective, then the foreseeability analysis would change.

Though Patrick's injury is unfortunate, "[b]usiness proprietors are not insurers of their patrons' safety" in Tennessee. *Blair*, 130 S.W.3d at 764. Without any evidence that Wilderness should've known about the broken glass, there isn't a triable issue of fact for the jury here.

## IV.

For these reasons, we AFFIRM the district court's grant of summary judgment for Wilderness.