*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0218p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

12-1857

LELA TOMPKINS,

*Plaintiff-Appellant*,

*v.*

CROWN CORR, INC.; DETROIT METROPOLITAN
AIRPORT, d/b/a Wayne County Airport
Authority, NORTHWEST AIRLINES; HUNT
CONSTRUCTION GROUP, INC.; KIMCO
CORPORATION,

*Defendants-Appellees*.

12-1928

LELA TOMPKINS,

*Plaintiff-Appellee*,

*v.*

NORTHWEST AIRLINES,

*Defendant-Appellant*.

Nos. 12-1857/1928

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cv-10413—Bernard A. Friedman, District Judge.

Argued: June 19, 2013

Decided and Filed: August 9, 2013

Before: KEITH, CLAY, and KETHLEDGE, Circuit Judges.

1

————————

## COUNSEL

————————

**ARGUED:** Rick J. Patterson, POTTER, DeAGOSTINO, O'DEA & PATTERSON, Auburn Hills, Michigan, for Appellant Lela Tompkins in 12-1857 and Appellee Lela Tompkins in 12-1928. Fred J. Fresard, DYKEMA GOSSETT PLLC, Bloomfield Hills, Michigan, for Appellee Detroit Metropolitan Airport in 12-1857 and Appellant Northwest Airlines in 12-1928. Jason R. Mathers, HARVEY KRUSE P.C., Troy, Michigan, for Appellee Crown Corr in 12-1857. Karen E. Beach, PLUNKETT COONEY, Bloomfield Hills, Michigan, for Appellee Hunt in 12-1857. Thomas M. Douglas, LAW OFFICES OF CATHERINE A. GOFRANK, Troy, Michigan, for Appellee Kimco in 12-1857. **ON BRIEF:** Rick J. Patterson, Steven M. Potter, Gregory M. Janks, POTTER, DEAGOSTINO, O'DEA & PATTERSON, Auburn Hills, Michigan, for Appellant in 12-1857 and Appellee in 12-1928. Fred J. Fresard, DYKEMA GOSSETT PLLC, Bloomfield Hills, Michigan, Timothy M. Kuhn, DYKEMA GOSSETT PLLC, Detroit, Michigan, for Appellee Detroit Metropolitan Airport in 12-1857 and Appellant Northwest Airlines in 12-1928. Jason R. Mathers, HARVEY KRUSE P.C., Troy, Michigan, for Appellee Crown Corr in 12-1857. Karen E. Beach, PLUNKETT COONEY, Bloomfield Hills, Michigan, for Appellee Hunt in 12-1857. Thomas M. Douglas, LAW OFFICES OF CATHERINE A. GOFRANK, Troy, Michigan, for Appellee Kimco in 12-1857.

————————

## OPINION

————————

CLAY, Circuit Judge. Plaintiff Lela Tompkins ("Tompkins") slipped and fell at Detroit Metropolitan Airport ("DTW"). She filed suit in state court against Northwest Airlines ("Northwest") and the Wayne County Airport Authority ("WCAA"), alleging that they breached their statutory duty to repair and maintain the terminal. Plaintiff also sued Kimco, the company that provided janitorial services to the terminal. Her claims against the WCAA were for liability under the public building exception to the Governmental Tort Liability Act, Mich. Comp. Laws § 691.1406, while her claims against Northwest and Kimco were based on theories of failure to inspect and maintain the premises. Defendants Northwest and the WCAA filed a third-party complaint against Hunt Construction Group ("Hunt") and Crown Corr ("Crown"), contractors involved in the construction and maintenance of the airport terminal. After a

complicated procedural history, in which the case was removed to federal court, remanded, and then removed again, all Defendants filed motions for summary judgment. The district court granted the motions made by Hunt and Crown, denied Northwest's motion on procedural grounds, granted WCAA's motion, and finally, granted Kimco's motion. Plaintiff's suit against Northwest proceeded to trial, where a jury found in her favor, but awarded only $3,198.80 in damages, of which only $1,439.46 was attributable to Northwest.

Plaintiff now appeals the award of summary judgment to Hunt, Crown, WCAA, and Kimco. She also appeals the district court's denial of her motion for a new trial.[1] Northwest appeals the district court's denial of its motion for summary judgment, as well as the court's denial of its motion for a directed verdict. For the reasons set forth in this opinion, we **AFFIRM** the judgments of the district court.

## BACKGROUND

### A.    Facts

Plaintiff Lela Tompkins was injured when she slipped and fell at McNamara Terminal ("McNamara") in Detroit Metropolitan Airport on December 29, 2005. She sued Northwest Airlines, whom she alleges had possession and control of McNamara at the time of the incident. The instant appeal addresses several claims related to that underlying lawsuit.

First, Plaintiff alleges that the Wayne County Airport Authority, which owns DTW, breached its statutory duty to repair and maintain McNamara. Next, she alleges that Kimco, who provided janitorial services at McNamara, was negligent in its "policing" of the premises. Finally, Plaintiff alleges that Crown and Hunt were negligent in their installation and repair of a leaky roof at McNamara.

---

[1]Plaintiff's notice of appeal also included the district court's denial of her motion for a directed verdict with respect to Crown and Hunt, but she does not pursue this claim before this Court.

Plaintiff sustained injuries to her right elbow, ankle, knee, and back when she slipped near the escalators that lead to the tram station at McNamara. The alleged cause of the fall was a large puddle of water on the floor near the down escalator. Plaintiff went to the Oakwood Hospital emergency room, where she was treated for pain to her neck, lower back, arm, and hip. After returning to her home in West Palm Beach, Florida, Plaintiff sought treatment with a chiropractor in January 2006. When that treatment failed to relieve her pain, her chiropractor referred her to an orthopedist on January 20, 2006. Over the course of the next few months, Plaintiff underwent several surgeries and various procedures, but has remained in serious pain, and must use "orthopedic support devices," such as a back brace and cane. Plaintiff is uninsured, and claims outstanding medical bills of nearly $600,000.

McNamara Terminal opened to the public in February 2002. The terminal is part of Detroit Metropolitan Airport, which is itself owned and administered by the WCAA. WCAA entered into a lease with Northwest Airlines. Under the terms of the lease, WCAA remained ultimately responsible for the maintenance and operation of the terminal, but Northwest actually conducted maintenance and repairs as an agent of the WCAA. From 2002 until 2008, when Northwest merged with Delta Airlines,[2] Northwest was the sole tenant and had possession and control of McNamara. During the first year of operations at McNamara there were issues involving leaks from the roof near the tram area. Northwest attempted to get these issues resolved under its warranty with Crown rather than by hiring another outside contractor.

Defendant Hunt was the general contractor during the building of McNamara. Hunt was contractually obligated to maintain personnel on-site for three years following the construction to address ongoing issues and warranty items. Kimco was the contractor for housekeeping and cleaning at the terminal. Its contract required it to deal with moisture on the floor of the terminal. Crown was the roofing company that installed the roof during construction, and which was responsible for roofing repairs.

---

[2]Northwest continued to operate under its own name until the completion of the merger in January 2010.

Immediately after the terminal opened, there were problems with leaks in the roof. Crown made repeated repairs under the terms of its warranty with Northwest. The leaks were allegedly caused by a failed lap joint that made the roof vulnerable to rain.

On December 29, 2005, while in transit from Phoenix, Arizona to her home in West Palm Beach, Florida, Plaintiff had a scheduled lay-over at DTW. After taking the escalator up to the tram station, she slipped and fell in a puddle, causing injuries to her arms, legs, and back. Gwendolyn Chmiel, who would later testify at trial, went to assist Plaintiff. Chmiel testified that she could not see the puddle until she was four or five feet away. Plaintiff was then taken to the hospital, where X-rays did not reveal any severe injuries. As noted above, she also received treatment in Florida. She then filed suit in Michigan state court.

### B.     Procedural History

Plaintiff filed suit against Northwest, WCAA, and Kimco in December 2005 in Wayne County Circuit Court. WCAA and Northwest then filed third-party complaints against Hunt and Crown. Crown initially removed the case to federal court, but later withdrew that removal, and the case was remanded to state court.

In state court, Hunt and Crown filed motions for summary judgment, arguing that the claims against them were barred by Michigan's statute of repose, Mich. Comp. Laws § 600.5839, which exempts contractors from liability in some actions after a period of time. Those motions were granted. Northwest moved the court for summary judgment, arguing that the negligence claims were time-barred based on the contract of carriage between it and Plaintiff. That motion was denied. WCAA and Northwest then filed notices against Hunt and Crown alleging non-party fault, and Plaintiff filed an amended complaint listing Hunt and Crown as defendants. Crown then removed the case to the United States District Court for the Eastern District of Michigan.

All Defendants moved the district court for summary judgment at the close of discovery. The court denied Northwest's motion, finding that 28 U.S.C. § 1450 and Federal Rule of Civil Procedure 60(b) precluded it. The court granted the other motions

on the merits.**3** The court thus allowed Plaintiff to proceed to trial against Northwest. On March 29, 2012, a jury returned a verdict in favor of Plaintiff against Northwest, and apportioned fault as: 45% to Northwest, 30% to (non-party to the trial) Crown, and 25% to Plaintiff. The jury awarded Plaintiff $3,198.80, which was the Plaintiff's cost of treatment in Michigan, and the court entered a judgment awarding $1,439.46 in damages to Plaintiff from Northwest.

Plaintiff now appeals the denial of her motion for a new trial pursuant to Federal Rule of Civil Procedure 59, as well as the grants of summary judgment to WCAA, Kimco, Crown, and Hunt. Northwest appeals the district court's denials of its motions for summary judgment and a directed verdict.

## DISCUSSION

### I.        Plaintiff's Motion for a New Trial

#### A.        Standard of Review

Following a jury trial, a party may move for a new trial pursuant to Federal Rule of Civil Procedure 59. When a court refuses to grant such a motion, this Court reviews that decision for abuse of discretion. *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 405 (6th Cir. 2006); *In re Brown*, 342 F.3d 620, 627 (6th Cir. 2003). "[This Court] 'will find an abuse of discretion only when the Court has a definite and firm conviction that the trial court committed a clear error of judgment.'" *Mike's Train House*, 472 F.3d at 405 (quoting *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994)).

#### B.        Analysis

Federal Rule of Civil Procedure 59 states that a court may "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). This

---

**3**The reasoning of the court for each of these motions is addressed below.

has historically required a court to find that "a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045–46 (6th Cir. 1996) (internal quotation marks omitted) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). In the instant case, Plaintiff alleges that Defense counsel engaged in persistent misconduct, by repeatedly referring to the "south Florida litigation machine." (Pl.'s Br. at 21.) These references, Plaintiff claims, led the jury to only award her damages for medical costs incurred in Michigan. Plaintiff further claims that the jury's verdict on damages was against the weight of the evidence.

### 1.     Alleged Misconduct

In order for a party to prevail on an appeal of a district court's denial of a Rule 59 motion based on a theory of opposing counsel's misconduct, that party must show that the district court abused its discretion, and must make a "concrete showing" that the conduct "consistently permeated" the trial such that the party was unfairly prejudiced by the misconduct. *Sutkiewicz v. Monroe Cnty. Sheriff*, 110 F. 3d 352, 361 (6th Cir. 1997). To determine whether there is a reasonable probability that the conduct affected the verdict, an appellate court must examine "the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case . . . and the verdict itself." *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980). The power to set aside a verdict on the basis of misconduct "should be sparingly exercised on appeal." *Farley v. Country Coach, Inc.*, 403 F. App'x 973, 982 (6th Cir. 2010) (quoting *Kiewit*, 624 F.2d at 756) (internal quotation marks omitted).

In this case, there is no significant evidence of such prejudice. First, the remarks that Plaintiff complains of must be viewed against the entirety of the record. The remarks were scattered and isolated. In addition, the remarks were not directed at

creating "extraneous matters . . . or unrelated subjects," *id.*, but were directly tied to Defendant's attempt to discredit Plaintiff's motives and proof of injury. For example, in his opening statement, defense counsel made a statement regarding Plaintiff's solicitation of a lawyer prior to seeing a doctor. This statement was not objected to, and was supported by later evidence. Furthermore, the claims that defense counsel made were directed specifically to the measure of damages, as he alleged that the reason the calculations were so high was a result of doctors attempting to get fees. As the damages calculation was a key issue in the trial, it cannot be characterized as an extraneous matter. In addition, evidence at trial suggested that the proceeds of the lawsuit would benefit doctors, rather than Plaintiff. Even to the extent that this evidence was prejudicial, it was fairly isolated, and when it was objected to, the court sustained the objection and counsel moved on.

Plaintiff presents no direct evidence as to how these remarks prejudiced the jury. The jury returned a verdict in favor of Plaintiff; the primary reason for appealing appears to be dissatisfaction with the damages award. Finally, the strongest argument for prejudice is that an exhibit list was inadvertently given to the jury. While deliberating, the jury asked to see exhibits that had not been introduced at trial. The court realized that defense counsel had included a list of all of its exhibits with the list of actually introduced evidence. The jury never saw the other exhibits, and a curative instruction was given. The court found that this inclusion was an accident, and used the very strong curative instruction that Plaintiff requested. The determination of whether or not a jury was in fact prejudiced is usually left to the discretion of the district court, because the district court has an advantageous viewpoint with which to decide that question relative to an appellate court, which is dependent on the record alone. *Balsley v. LFP, Inc.*, 691 F.3d 747, 761–62 (6th Cir. 2012) (quoting *Kiewit*, 624 F. 2d at 756)**.**

In light of both this Court's deferential review, and the totality of the circumstances, including the jury's verdict in favor of Plaintiff, there is no basis upon which to disturb the district court's decision not to grant a new trial.

## 2. The Weight of the Evidence

When a party seeks to have a court set aside a verdict on the grounds of the weight of the evidence, the court may only do so "if [the verdict] is against the clear weight of the evidence as a whole." *In re Brown*, 342 F.3d at 627 (6th Cir. 2003) (internal quotation marks and citations omitted). Courts can only set aside the verdict with respect to damages if the verdict could not have been reasonably reached. *Bell v. Johnson*, 404 F.3d 997, 1003 (6th Cir. 2005); *Acuity Mut. Ins. Co. v. Frye*, 471 F. App'x 431, 435 (6th Cir. 2012) ("A trial court may not grant a new trial on the ground of insufficient damages unless the jury verdict is one that could not reasonably have been reached.")

Plaintiff was the prevailing party at trial. Her claim for a new trial is based on the damages calculation by the jury, which awarded her $3,198.80, the amount of medical expenditure in Michigan. Without citing any cases, Plaintiff asserts that some of the evidence could have been found to entitle her to a higher damages award. But that is specifically the kind of judgment better left to the jury. At trial, there was evidence presented as to Plaintiff's treatments in Florida, as well as expert testimony based on review of her medical records, which could have supported the conclusion that her injuries were not severe, or that the injuries for which causation was proven were adequately compensated by an award based on her care in Michigan. Even if Plaintiff raised this issue directly, there is no clear error in the judgment. And because this issue is presented as an appeal of a Rule 59 motion, this Court's review is even more deferential. Accordingly, Plaintiff's challenge to the district court's ruling is denied, and the judgment affirmed.

**II.     The District Court's Award of Summary Judgment to Defendants WCAA, Kimco, Crown, and Hunt**

**A.     Standard of Review**

A district court's grant of summary judgment is reviewed *de novo*. *Back v. Nestle USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (citing *Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003)); *Baggs v. Eagle-Picher Indus.*, 957 F.2d 268, 271 (6th Cir. 1992). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4] This Court views all evidence in the light most favorable to the nonmoving party, and draws all reasonable inferences in its favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986); *Hoover v. Walsh*, 682 F.3d 481, 492 (6th Cir. 2012) (citing *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011)); *Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011) ("In reviewing the district court's decision, we view all facts in a light most favorable to the non-moving party and draw inferences in favor of the non-movant.").

However, "[o]n a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (internal quotation marks omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

---

[4]Although this Court has jurisdiction of this case as a result of diversity of citizenship, 28 U.S.C. § 1332, and the applicable substantive law is therefore the state law of Michigan, *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938), a federal court sitting in diversity uses the federal standard for summary judgment. *See Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, — U.S. —, 130 S. Ct. 110 (2009); *accord Beat ex rel. Putnam v. Walgreen Co.*, 408 F. App'x 898, 901 n.2 (6th Cir. 2010) (quoting *Gafford*, 997 F.2d at 165–66).

**B.**        **Analysis**

On appeal, Plaintiff challenges the grant of summary judgment to various counter-parties. We address each of these challenges in turn.

**1.**        **Wayne County Airport Authority**

WCAA moved the district court for summary judgment on Plaintiff's claims against it. The district court granted summary judgment to WCAA on October 12, 2011. First, it found that under Michigan's Governmental Tort Liability Act, Mich. Comp. Laws § 691.1401 *et seq.*, ("GTLA"), the WCAA was not immune from liability simply because of its status as a governmental agency or instrumentality.

Under that act, governmental agencies are generally immune from tort liability when engaged in a governmental function. Mich. Comp. Laws § 691.1407(1). "Governmental function" is defined as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law," *id.* § 691.1401(b), and the construction and maintenance of an airport is specifically listed as a governmental action elsewhere in the Michigan Compiled Laws. Mich. Comp. Laws § 259.132 ("[T]he acquisition, establishment, construction, enlargement, improvement, maintenance, equipment and operation of airports, landing fields and other aeronautical facilities . . . are hereby declared to be public, governmental . . . functions . . . . ").

However, under the GTLA, there is a public building exception. This exception requires governmental agencies "to repair and maintain public buildings under their control." Mich. Comp. Laws § 691.1406. The district court found that the WCAA fit within this exception, and therefore the WCAA was not immune from tort liability as owner of McNamara. But the court still granted summary judgment, finding that while the government building exception exposed the WCAA to liability under the GTLA, the nature of the claim shielded it from liability under the same act.

Under the GTLA, agencies operating government buildings, even when exempt from immunity as a result of their ownership or control over the building, are granted

immunity when the claim asserted is one of design defects. *Renny v. Dep't of Transp.*, 734 N.W.2d 518, 527–28 (Mich. 2007) ("[T]o the extent that plaintiff's claim is premised on a design defect of a public building, it is barred by governmental immunity."). Accordingly, if Plaintiff's claim against WCAA was based on a design defect, then it is barred.

The district court found that Plaintiff's claim against the WCAA was a design defect claim, and therefore the WCAA was immune from liability. Specifically, it found that there was no evidence that the roof was ever damaged; it leaked from the time of its construction, and there was no evidence of any post-construction damage to the roof between its construction and the Plaintiff's injury. Citing *Renny*, the district court found that the words "repair" and "maintain," the terms preferred by Plaintiff in characterizing her claim, would imply that the building had been restored to its original condition or put into a sound condition, but that was not the best characterization of the facts. On appeal, Plaintiff argues that under *Tellin v. Forsyth Township*, 806 N.W.2d 359 (Mich. Ct. App. 2011), her claim should be characterized as a repair or maintenance claim, rather than as a design defect claim.

We agree with the district court. Plaintiff's claims against the WCAA were based on theories of design defects, and accordingly, are barred by Michigan's governmental immunity statute. In *Tellin*, the Michigan court stated that:

> A design defect would appear to consist of a dangerous condition inherent in the design itself, such as its characteristics, functioning, and purpose. For example, the accumulation of the snow and ice on the sidewalk in *Renny* was not from any malfunction of the roof or problem with its construction, but was a natural effect of the characteristics of the new roof design, which was not intended to divert melting snow and ice.

*Id.* at 367 (footnotes omitted). The court continued to say that, "[i]n contrast, a failure to repair or maintain appears to consist of something caused by extrinsic circumstances, such as a malfunction, deterioration, instability, or a fixture that is improperly secured or otherwise improperly constructed or installed." *Id.*

In this case, there are no extrinsic circumstances that led to the dangerous condition. The roof itself was improperly designed, and so water leaked into the terminal. In addition, Plaintiff's pleadings and the prior course of this litigation indicate that her claim against WCAA was based on design defects. The acknowledged issue with the leaks in the roof were not based on construction flaws, such as subpar materials or incompetent workmanship, but were instead caused by a lap joint that was defectively designed. This is directly analogous to the roof design issue in *Renny*. In addition, the Michigan Supreme Court has instructed courts to construe exceptions to the GTLA narrowly. *Ross v. Consumers Power Co.*, 363 N.W.2d 641, 659–60 (1984) (*per curiam*), *overruled on other grounds by In re Bradley Estate*, 2013 WL 3866538, — N.W.2d —, (Mich. July 26, 2013)). Accordingly, WCAA is immune from Plaintiff's claim based on governmental immunity, and we affirm the judgment of the district court.

### 2.    Kimco

Defendant Kimco moved the district court for summary judgment, arguing that it did not owe Plaintiff any duty of care. The district court granted that motion on June 14, 2011, and Plaintiff now appeals. While we find that the district court's legal analysis was flawed, we affirm the grant of summary judgment on alternative grounds.

In January 2004, Johnson Controls, Inc. ("Johnson"), the company that managed McNamara, hired Kimco to provide janitorial services. That contract was extended in March 2005 to cover the part of the terminal in which Plaintiff was injured. Kimco's responsibilities included mopping the floors. While Kimco did not contest that Plaintiff slipped because of an accumulation of water on the floor, Kimco claims that it did not owe a duty to Plaintiff, because the scope of its duty was limited by its contract with Johnson. The district court agreed with this position, and thus granted Kimco's motion for summary judgment. This analysis, however, was based on a misunderstanding of Michigan's tort law.

Under Michigan law, a claim of negligence has four elements: duty, breach, damages, and causation, *Hill v. Sears, Roebuck & Co.*, 822 N.W.2d 190, 195–96 (Mich.

2012), and summary judgment is appropriate where a defendant can show that he owed no duty to plaintiff. *Smith v. Kowalski*, 567 N.W.2d 463, 465 (Mich. Ct. App. 1997). "A legal duty or obligation may arise by contract, statute, constitution, or common law." *W. Am. Ins. Co. v. Meridian Mutual Ins. Co.*, 583 N.W.2d 548, 551 (Mich. Ct. App. 1998.) While Michigan case law makes it clear that one can owe a third party a duty of care, *see Hill*, 822 N.W.2d at 207, a defendant is only liable in tort for failing to perform under a contract when there is a violation of a duty "separate and distinct from the contractual obligation." *Fultz v. Union-Commerce Assocs.*, 683 N.W.2d 587, 592 (2004) (quoting *Rinaldo's Constr. Corp. v. Michigan Bell Tel. Co.*, 559 N.W.2d 647, 658 (Mich. 1997)) (internal quotation marks and citation omitted).

But "a contracting party's assumption of contractual obligations does not extinguish or limit separately existing common-law or statutory tort duties owed to noncontracting third parties in the performance of the contract." *Loweke v. Ann Arbor Ceiling & Partition Co., LLC*, 809 N.W.2d 553, 555 (Mich. 2011) (clarifying *Fultz*). In *Loweke*, the Michigan court found that:

> [C]ourts should not permit the contents of the contract to obscure the threshold question of whether any independent legal duty to the noncontracting third party exists, the breach of which could result in tort liability. Instead, in determining whether the action arises in tort, and thus whether a separate and distinct duty independent of the contract exists, the operative question under *Fultz* is whether the defendant owed the plaintiff any legal duty that would support a cause of action in tort, including those duties that are imposed by law.

*Id.* at 561 (vacating a decision of the lower court that ruled that a subcontractor was not liable to a third party because of the Michigan Supreme Court's decision in *Fultz*).

The district court's decision was based on the understandable, although erroneous, reading of *Fultz*—that no cause of action can exist when the harm is caused by the subject of the contract—that the *Loweke* court corrected. *Id.* at 557 ("Since *Fultz* . . . courts have erroneously interpreted this Court's decisions as rejecting accepted tort-law principles and creating a legal rule . . . which bars negligence causes of action on the basis of a lack of duty if a . . . plaintiff alleges a hazard that was the subject of the

defendant's contractual obligations with another."). Kimco was under a common-law duty to perform its duties at the appropriate standard of care independent of its contract with Johnson (although its contract with Johnson may have apportioned liability in a particular way), and the district court erred in granting it summary judgment on those grounds. Under the reading favored by the district court, Kimco could only ever face liability for a breach of contract. But that is specifically the rule that *Loweke* disavowed, and in any event, it is possible that Kimco could have simultaneously performed under its contract while behaving in a negligent manner, which indicates that Kimco had an independent duty to a foreseeable third party apart from its contractual duty to Johnson. While the facts in this case closely resemble *Fultz*, where the Michigan Supreme Court found that a company hired to clean snow from a parking lot could not be liable in tort to a third party despite its negligent removal of the snow, because it had not created a new hazard, in *Loweke*, the Michigan Supreme Court clarified the rule to state that "[a] defendant—by performing an act under the contract—was not relieved of its preexisting common-law duty to use ordinary care in order to avoid physical harm to foreseeable persons and property in the execution of its undertakings." *Id.* at 172. It is our understanding, therefore, that Michigan law permits tort liability arising from physical (and possibly other types of) harm to foreseeable third parties where there has been negligent performance of a duty, even if the duty was based on their contractual responsibility to another.

However, the district court's error in interpreting Michigan law does not entirely preclude summary judgment. This Court "may affirm [a grant of summary judgment] on any grounds supported by the record." *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012). Plaintiff has not presented sufficient evidence of negligence on the part of Kimco. Based on the evidence proffered by Plaintiff, Kimco appears to have satisfied its duty of care. Although Kimco's argument that it was monitoring the terminal, and thus could not have been negligent, is inapposite—the negligence could have been failure to monitor effectively—Plaintiff has not produced enough evidence to permit us to find that there was, in fact, negligence. At best, the evidence that Plaintiff has raised suggests that it was likely that a Kimco employee was on the tram

platform at some point after the leak started. But that does not mean that a Kimco employee would have seen the leak but for possible negligence. Unlike the claim against Northwest, where Plaintiff produced significant evidence that Northwest was aware of leaking, and there was a question as to how appropriate its actions were to fix the leaks, with respect to Kimco, Plaintiff has only produced evidence that suggests that Kimco was diligent in its monitoring of leaks. Plaintiff needed to do more to survive summary judgment; for example, Plaintiff might have shown actual knowledge of this leak, or that Kimco's monitoring was likely to miss leaks. In the instant case, Plaintiff failed to produce sufficient evidence that Kimco had failed to do its job in order to create a material dispute as to fact on this question. Accordingly, we affirm the district court's grant of summary judgment on this claim.

### 3.     Crown Corr and Hunt Construction[5]

Plaintiff initially asserted claims against WCAA, Northwest, and Kimco in Michigan state court in December 2008. Defendants WCAA and Northwest filed a third-party complaint against Hunt and Crown in February 2009. The state court granted Crown's motion for summary judgment, and dismissed the third-party complaint against both Crown and Hunt. That dismissal was not appealed. Northwest and WCAA moved the court to file notices of non-party fault against Crown and Hunt, and that motion was granted. On December 10, 2009, the state court granted Plaintiff's motion to amend her complaint to name Crown and Hunt as defendants. Plaintiff filed her amended complaint on December 29, 2009. Crown was served with the amended complaint on January 7, 2010, and removed the case to federal court. Northwest and WCAA then filed their cross-complaint against Crown and Hunt. The district court ruled that the cross-complaints were barred by Michigan's statute of repose, a decision which is not appealed. Crown and Hunt argue that these claims are barred by both the doctrine of full faith and credit, and that even if found valid under that doctrine, fail under the statute of repose.

---

[5]The district court initially granted these motions on the basis of timeliness, but after granting Plaintiff's motion for reconsideration, ruled that the claims were governed by the repose statute.

First, we find that these claims should have been disposed of on the basis of the state court's earlier decision. "Under 28 U.S.C. § 1738, federal courts are required to give the judgments of state courts the same preclusive effect as they are entitled to under the laws of the state rendering the decision . . ." *Exec. Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 795 (6th Cir. 2004). Michigan takes "a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004).

The claims against Crown and Hunt are not identical to the claims in the third-party complaint dismissed by the state court. However, as Plaintiff was a party to that action, and had every opportunity to bring these causes of action in the state court, these claims should have been dismissed as a matter of *res judicata*. And even without this doctrine, Defendants were properly granted summary judgment by the district court.

Hunt was the general contractor hired to build McNamara. Hunt, in turn, hired Crown to build the roof at McNamara. Crown completed its work and the terminal became operational in February 2002. Crown's contract to construct the roof included a ten-year warranty, and it was occasionally called upon to perform work on the roof. Until 2005, there were occasional repairs made on the roof.

Under Michigan's statute of repose, absent gross negligence:

> A person shall not maintain an action to recover damages for injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of an improvement to real property, or an action for contribution or indemnity for damages sustained as a result of such injury, against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, or against any contractor making the improvement, unless the action is commenced within either of the following periods:
> > (a) Six years after the time of occupancy of the completed improvement, use, or acceptance of the improvement

Mich. Comp. Laws § 600.5839.

Plaintiff argued below that while the new roof constituted an "improvement," the later work (addressing leaks in the roof pursuant to the warranty) did not relate to the improvement, but constituted repairs, which are not covered by the repose statute. Crown and Hunt claim that the later work was a continuation of the original work. If Defendants' contention is correct, then as the terminal was "accepted" on February 24, 2002, Plaintiff was required to bring her claims prior to February 24, 2008.

The district court found that Crown and Hunt's continued work related to the original improvement. Plaintiff asserts that any work done after the occupation or acceptance of the building cannot be considered a continuation of the work, and thus cannot start the tolling period for the statute of repose. Plaintiff does not cite any cases for this proposition. Defendants cite several cases, however, that show that even when work has continued after the date of acceptance, the earlier date can still control for the purposes of the statute of repose. *See Beauregard-Bezou v. Pierce*, 487 N.W.2d 792, 794(Mich. Ct. App. 1992).

To the extent that Plaintiff can show repairs, they were clearly within the scope of the original contract, and thus a continuation of the work. *See Travelers Ins. Co. v. Guardian Alarm Co. of Michigan*, 586 N.W.2d 760, 763–64 (Mich. Ct. App. 1998), *overruled on other grounds by Miller-Davis Co. v. Ahrens Const., Inc.*, 802 N.W.2d 33 (Mich. 2011), ("Here, the six-year limitation period began to run when Troy Design used or accepted the alarm system . . . Although Guardian performed additional work on the alarm system in June 1989, that work was incidental to the earlier installation of the completed system."); *Male v. Mayotte, Crouse & D'Haene Architects, Inc.*, 413 N.W.2d 698, 700 (Mich. Ct. App. 1987) (state of repose began to run on date of acceptance, not when repairs and installation finished). Accordingly, the district court correctly dismissed Plaintiff's claims against Crown and Hunt on the basis of the statute of repose.

### III.    Northwest's Motion for Summary Judgment

Northwest appeals the district court's denial of its motion for summary judgment, alleging that Plaintiff's claim was time-barred because of the terms of the contract of carriage between the Plaintiff and Defendant.  Because this motion is barred by the application of 28 U.S.C. § 1738, we affirm the judgment of the district court.

### A.    Standard of Review

While Northwest appeals the denial of summary judgment, a party may not ordinarily appeal a denial of summary judgment after a full trial on the merits.  *Ortiz v. Jordan*, — U.S. —, 131 S. Ct. 884, 888–89 (2011); *accord Kennedy v. City of Cincinnati*, 483 F. App'x 110, 111 (6th Cir. 2012).  However, this Court has held that "*Ortiz* leaves open the possibility that cases 'involv[ing] . . . [only] disputes about the substance and clarity of pre-existing law' may still be considered . . . " *Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 545 (6th Cir. 2012) (quoting *Ortiz*, 131 S. Ct. at 892) (alteration in original).  Therefore, this Court may treat Northwest's appeal as if it were made under Rule 50, which is treated under the same standard as a motion for summary judgment pursuant to Rule 56.  *Id.* at 545.

### B.    Analysis

The district court denied Northwest's motion for summary judgment on this basis in a decision in February 2011.  In that decision, the district court held that this issue had been decided by the state court, and that Defendant's challenge to that decision was untimely.  Accordingly, it could not revisit the decision pursuant to 28 U.S.C. § 1450.  Treating Northwest's motion as a motion for relief under Federal Rule of Civil Procedure 60(b), the district court found that the state court's denial of the motion was not a "manifest injustice," and thus it would not revisit the claim as decided by the state court.

The district court was correct to find that Northwest's motion for reconsideration of the state court order was untimely.  The state court entered its judgment denying summary judgment on time-bar grounds on September 3, 2009.  The case was removed

to federal court on January 29, 2010. When the case was removed, all existing orders and decisions were federalized. *See Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508–09 (2001). The state court orders are thus treated as if they were the orders of the district court. Under Local Rule 7.1(h)(1) of the Eastern District of Michigan, a motion for reconsideration must be filed within fourteen days, and under the Federal Rule of Civil Procedure 60(c), the motion must be made within "a reasonable time." Northwest filed its motion on December 16, 2010, more than a year after the state court disposition was entered, and over ten months after the case had been removed to federal court. Accordingly, the district court was correct to find that the motion was untimely.

Even had the motion for reconsideration been timely, the issue at stake had been disposed of by the state court, and Defendant is prevented from re-litigating the issue in federal court. As noted above, Michigan gives a broad construction to preclusion doctrines, and the mere assertion that the state court's decision was erroneous does not give rise to a claim in federal court.

Accordingly, we affirm the judgment of the district court.

## IV.    Northwest's Motion for a Direct Verdict

Northwest argues that the district court should have awarded it a directed verdict[6] because Northwest had no notice of the condition, and in the alternative, because the puddle was open and obvious. We reject both claims.

### A.    Standard of Review

This Court reviews the denial of a motion for a directed verdict *de novo*. *United States v. Alpine Indus., Inc.*, 352 F.3d 1017, 1022 (6th Cir. 2003). "In diversity cases, when a Rule 50 motion for judgment as a matter of law is based on a challenge to the sufficiency of the evidence, this Court applies the standard of review used by the courts

---

[6]Northwest originally brought this claim as a summary judgment issue, but now appeals (appropriately) on directed verdict grounds.

of the state whose substantive law governs the action." *Kusens v. Pascal Co.*, 448 F.3d 349, 360 (6th Cir. 2006); *accord Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 466 (6th Cir. 2009).[7] In Michigan, the equivalent motion is reviewed *de novo*. *Betts*, 558 F.3d at 467. As with summary judgment, this Court must view all evidence in the light most favorable to the non-moving party. *Id.*

## B.    Analysis

First, there was sufficient evidence for a jury to conclude that Northwest had constructive notice of the condition. *See Bowling v. Wal-Mart Stores, Inc.*, 233 F. App'x 460, 468 (6th Cir. 2007) (finding no notice). While Northwest asserts that *Bowling* is directly on point, in *Bowling*, the issue was about a single leak. This Court support the district court's finding that nothing in that case indicated "that Defendant's employees had neglected to make regular inspections, or that such leaks recurred with sufficient frequency to place Defendant on constructive notice of the existence of the puddle." *Id.* at 467. In this case, leaks were frequent; in fact, much of Northwest's defense was based on the existence of leaks going back to the opening of the terminal. *See also Herteg v. Somerset Collection GP, Inc.*, 2002 WL 31105000, at *5 (Mich. Ct. App. Sept. 20, 2002) ("We believe that it is reasonable to infer from this evidence that given the advance warning of leaking problems, the mall's failure to inspect and maintain this area constituted active negligence that caused the dangerous condition, i.e., the puddle of water"). Accordingly, a reasonable jury could have concluded that regardless of the specific puddle, Northwest was aware of the potential for leaks, and should have taken more care to prevent them. Furthermore, this was an appropriate question for a jury to resolve. *See, e.g.*, *Clark v. Kmart Corp.*, 634 N.W.2d 347, 348–49 (Mich. 2001) ("This case squarely presents the question whether the evidence would permit a jury to find that the dangerous condition was present long enough that the defendant should have known of it.").

---

[7]While Northwest does not refer to its claim as a challenge based on the sufficiency of the evidence, its arguments address questions of sufficiency because they are directed at what a reasonable juror could have found based on the evidence presented.

Northwest next claims that the condition was "open and obvious," which would preclude liability on a negligence theory. "[A] premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land. However, this duty does not generally encompass removal of open and obvious dangers." *Lugo v. Ameritech Corp., Inc.*, 629 N.W.2d 384, 386 (Mich. 2001) (internal citation omitted). Whether a hazard is open and obvious is measured against an objective standard of reasonability. *Novotney v. Burger King Corp.*, 499 N.W.2d 379, 381 (Mich. Ct. App. 1993).

The jury heard testimony from Plaintiff that she was paying attention, but did not see the puddle because the floor was glossy. Another witness testified that as she walked over to assist Plaintiff after she fell, she did not see the water until she was very close to it. Finally, a third witness, who had helped install the flooring at the terminal testified that the floor had a gloss finish that would make it hard to see the water because the floor had the same appearance regardless of whether it was wet or dry. Based on this testimony, a jury could reasonably have found that the hazard was not open or obvious. Furthermore, in a recent case, this Court has held that a spill at DTW was not open or obvious as a matter of law. *Matteson v. Northwest Airlines, Inc.*, 495 F. App'x 689, 693–94 (6th Cir. 2012) (reversing district court's grant of summary judgment to defendant and finding a genuine dispute as to material issue on this precise question). Therefore, this question was a matter of fact, which the jury resolved in favor of Plaintiff, and will not be reversed by this Court.

Accordingly, the district court's refusal to grant a directed verdict is affirmed**.**

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgments of the district court.