RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0042p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

ROBERT J. SCHULER, husband; NANCY D. SCHULER, wife; WINDEMERE PROPERTY OWNERS ASSOCIATION, INC., a Michigan non-profit corporation,

*Plaintiffs-Appellees*,

*v.*

ROBERT P. ADAMS, husband; CAROL A. ADAMS, wife,

*Defendants-Appellants*,

MICHIGAN DEPARTMENT OF ENVIRONMENT, GREAT LAKES AND ENERGY; UNITED STATES ARMY CORPS OF ENGINEERS,

*Third-Party Defendants-Appellees*.

No. 21-1613

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:21-cv-00827—Hala Y. Jarbou, District Judge.

Decided and Filed:  March 7, 2022

Before:  SILER, CLAY, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  David E. Hart, Matthew Mitchell, MADDIN, HAUSER, ROTH & HELLER, P.C., Southfield, Michigan, for Appellants.  Matthew T. Nelson, WARNER NORCROSS JUDD LLP, Grand Rapids, Michigan, for the Schuler and Windemere Property Owners Association Appellees.  Daniel P. Bock, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan for State of Michigan Appellees.

---

**OPINION**

---

MURPHY, Circuit Judge. It is black-letter law that federal courts of appeals generally have jurisdiction only over "final decisions" of federal district courts. 28 U.S.C. § 1291. It is also black-letter law that, as one exception to this rule, parties may immediately appeal a district court's nonfinal order granting a preliminary injunction. *Id.* § 1292(a)(1). But what happens if a state court grants the preliminary injunction, and a defendant then removes the case to federal court? Does the right to an early appeal of an injunction order cover the state court's order too? This appeal raises that question—one that falls in a gray area between these two black-letter principles.

Robert and Carol Adams want to build a home on their property, but their neighbors, Robert and Nancy Schuler, believe that their plans violate a restrictive covenant running with the land. A state court granted the Schulers a preliminary injunction stopping the construction. After the court's order, the Adamses filed a third-party complaint against the U.S. Army Corps of Engineers, which responded by removing the case to federal court. The Adamses then filed a notice of appeal of the state court's injunction order. But we have jurisdiction only over injunction orders "of" district courts, not state courts. *Id.* So we dismiss this appeal for lack of appellate jurisdiction.

I

In 1978, Heinz and Adriene Moellering paid $150,000 for just under 15 acres of pristine property abutting Lake Michigan in a county at the northernmost tip of mainland Michigan. Years later, the Moellerings proposed to divide their property into three parcels with three homes. They executed and recorded a "Declaration of Restriction on Land Use" to accomplish this division. Decl., R.1-1, PageID 36. The Declaration expressed their desire to construct an access road and septic line in wetlands on the property. *Id.* It also recognized that the proposal required "the discharge of fill material into wetlands" and that they needed to obtain permits from a state agency (the Michigan Department of Natural Resources) and a federal agency (the

U.S. Army Corps of Engineers). *Id.* In exchange for the permits, the Moellerings covenanted that they would keep the remaining wetlands "in an unaltered natural condition." *Id.* The Declaration's terms made it binding on the Moellerings' successors and expressly gave the state and federal agencies a right to enforce it. *Id.*

The Moellerings sold one of the three parcels to the Schulers. The Schulers' deed stated that it was "subject to easements, restrictions, reservations and right-of-ways of record[.]" Deed, R.1-1, PageID 41. The Schulers now live at a home on this site.

The Moellerings sold the neighboring parcel to other purchasers. The Adamses eventually came to acquire this part of the Moellerings' property in 2020. Each deed in the Adamses' chain of title contains language like that in the Schulers' deed subjecting their parcel to recorded land-use restrictions.

No home has been built on the Adamses' property. Before selling the property to the Adamses, though, the prior owners applied with the U.S. Army Corps of Engineers for a permit to construct a home on it. The Corps told these owners that it had decided that their land fell within an area over which a separate state agency—the Michigan Department of Environment, Great Lakes and Energy—now had jurisdiction.

The prior owners thus applied for a permit with this state agency, which we will call the "Department." When the Department informed nearby property owners about the requested permit, the Schulers objected because the application proposed to build a much larger home than the one contemplated by the Moellerings' Declaration. The professional who prepared this application also failed to mention the land-use restrictions in the Moellerings' Declaration; instead, the application noted that no conservation easements or other deed restrictions existed. The Schulers' objections apparently did not refer to the Declaration either. In May 2020, despite those objections, the Department granted a permit that authorized the clearing of over 12,000 square feet of wetlands and the construction of the larger home. The Schulers took no action to dispute the grant of the permit at this time. The Department later approved the transfer of this permit to the Adamses.

The Adamses began construction of the home.  On July 2, 2021, the Schulers (along with the Windemere Property Owners Association) sued them in Michigan state court.  The Schulers noted that the Adamses' proposed home would substantially encroach on the wetlands that the Moellerings promised to preserve in their Declaration.  They thus sought an injunction to stop the construction on the basis that it violated a restrictive covenant in that document.  The state court issued a temporary restraining order on the same day.

At some point in time that the parties dispute, the Corps and the Department learned of the Declaration.  The Corps noted that it could not enforce this Declaration because of its decision that it lacked jurisdiction of the property.  The Department, by contrast, issued a violation notice asserting that the Adamses had submitted a "false, incomplete, or inaccurate" permit application by failing to mention the Declaration.  Notice, R.19, PageID 955.  The Adamses continue to negotiate with the Department about the issue.

Back in this suit, the parties prepared for a preliminary-injunction hearing in state court.  The Adamses argued, among other things, that the Declaration's terms allowed only the Corps or Department (not the Schulers) to enforce it.  They also argued that the equitable doctrine of laches should bar the Schulers from invoking the Declaration because they failed to appeal the Department's grant of a permit and waited until only after the Adamses began construction to assert their rights.  On August 13, the state court rejected these arguments and converted its temporary restraining order into a preliminary injunction.  It concluded that the Schulers could likely enforce the Declaration and that the remaining state-law injunction factors favored an injunction.  The Adamses sought reconsideration of this preliminary-injunction decision, but the state court denied the motion on September 10.

Around the time of the state court's injunction order, the Adamses filed a third-party complaint that made the Corps and the Department parties to this suit.  On September 23, the Corps responded by removing the case to federal district court under 28 U.S.C. § 1442(a)(1), the federal-officer removal statute.

Since then, the Adamses have dismissed all claims against the Corps with prejudice and against the Department without prejudice. The Schulers have also filed a motion to remand the suit to state court for lack of subject-matter jurisdiction. Their motion remains pending.

II

This case landed in our court on October 8, 2021. On that date, the Adamses filed a notice of appeal of the state court's preliminary-injunction order (from August 13) and its order denying reconsideration of the injunction (from September 10). Before assessing the validity of this injunction, we must confront several jurisdictional questions.

The parties initially disagree over whether the district court has subject-matter jurisdiction. The Schulers ask us to order a remand to state court for lack of subject-matter jurisdiction because the Adamses have dismissed the Corps—the party that gave the district court jurisdiction under 28 U.S.C. § 1442(a)(1). The Adamses respond that a district court retains discretionary supplemental jurisdiction over a case even after it dismisses the federal entity that gave it original jurisdiction. *See* 28 U.S.C. § 1367; *compare Parker v. Della Rocco*, 252 F.3d 663, 665–67 (2d Cir. 2001) (per curiam), *with District of Columbia v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 133–34 (D.C. Cir. 1985) (per curiam); *see also* 14C Charles A. Wright et al., *Federal Practice and Procedure* § 3726, at 521–23 & n.83 (rev. 4th ed. 2018). In this case, moreover, the district court has yet to rule on the Schulers' motion to remand or decide whether to exercise its discretion to keep the case. Alternatively, the Adamses assert that the district court might have federal-question jurisdiction because, notwithstanding the well-pleaded complaint rule, substantial federal questions lurk in the record. *See* 28 U.S.C. § 1331; *compare Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005), *with Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 817 (1986).

The parties next disagree over whether the Adamses filed a timely notice of appeal. Highlighting the jurisdictional nature of the general 30-day time limit to appeal, the Schulers note that the Adamses did not appeal within that time from the state court's original injunction order. *See Bowles v. Russell*, 551 U.S. 205, 211–13 (2007); 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A). They further argue that the Adamses cannot take an immediate appeal from the

later order denying reconsideration (an appeal that would otherwise fall within the 30-day limit). *See Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012). The Adamses respond that their reconsideration motion should toll the time to appeal the injunction order. And although ignored by the parties, a 60-day time limit might apply here because a federal agency was a party to the suit at the time of the appeal. *See* 28 U.S.C. § 2107(b)(2); Fed. R. App. P. 4(a)(1)(B)(ii). That conclusion would render the appeal timely as to both state-court orders.

At day's end, we opt to avoid deciding these issues. We find it easiest to dismiss this appeal based on a separate jurisdictional defect that we have an independent duty to raise: Congress in its appellate-jurisdiction statutes did not give us jurisdiction over a state trial court's order granting or denying injunctive relief. *Cf. Mattingly v. Farmers State Bank*, 153 F.3d 336, 336 (6th Cir. 1998) (per curiam).

Federal courts of appeals generally have jurisdiction only over "final decisions" of the district courts. 28 U.S.C. § 1291. It should be obvious that no final decision exists in this case because the district court has not issued a judgment that ends the dispute. *See Page Plus of Atlanta, Inc. v. Owl Wireless, LLC*, 733 F.3d 658, 659 (6th Cir. 2013); *see also Preferred Care of Del., Inc. v. Estate of Hopkins*, 845 F.3d 765, 771 (6th Cir. 2017). Indeed, the Adamses appealed before the district court could even rule on its own jurisdiction.

Yet several exceptions to this presumptive "final-judgment rule" allow parties to take immediate appeals of specific types of orders. The Adamses rely on the exception that permits early appeals of injunction-related orders. 28 U.S.C. § 1292(a)(1). Because the state court granted a preliminary injunction, they argue, they may take this jurisdictional path to our court.

The relevant statutory text proves them wrong. It indicates that "the courts of appeals shall have jurisdiction of appeals from" "[i]nterlocutory orders of the district courts of the United States, . . . or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court[.]" *Id.* The average person versed in the ordinary meaning of prepositional phrases would not describe an order of a *state trial court* as an order "of" the *federal district court*. The phrase "order of the district court" (like the possessive "the district

court's order") naturally signals that the order "proceed[s] from" the district court or that the district court is the "origin" or "source" of the order. *Webster's New International Dictionary* 1689 (2d ed. 1934). But that is simply not true when a state court issues the challenged injunction order.

To transform the state court's order into an order of the district court, the Adamses turn to different text in 28 U.S.C. § 1450. After setting forth other rules for a civil action removed to a federal court from a state court, this section provides: "All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." *Id.* The Adamses read this language as compelling us to treat the state court's order as if it were an order "of" the district court. But that is not what the statute says. It indicates only that the state court's injunction remains in effect until the district court issues its *own* order "dissolv[ing] or modif[ying]" the injunction. *Id.* This congressional choice makes good sense. When defendants remove a case to federal court, the removal happens automatically. *See* 28 U.S.C. § 1446(d). So if a notice of removal dissolved the state-court injunction, a defendant could unilaterally void the injunction without any judicial oversight. Section 1450 protects against this result—a result that would encourage gamesmanship over the timing of removals. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 435–36 (1974). But the statute cannot be reasonably read to go further and treat the state-court injunction order as if it were an order of the district court.

Under normal interpretive rules, moreover, we should read the words in both sections together. *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014). In that regard, some of the procedural language in § 1450 closely matches some of the jurisdictional language in § 1292(a)(1). Recall that § 1292(a)(1) permits a party to appeal a district court's order not just when the order "grant[s]" an injunction but also when it "modif[ies]" or "dissolv[es]" the injunction or when it "refus[es] to dissolve or modify" it. *Id.* So each statute uses the same "modify" or "dissolve" language. If a party subject to a state-court injunction wants to take an interlocutory appeal, it need only ask the district court to modify or dissolve the injunction. If the district court declines to do so, its "refusing" of that request likely would become an

appealable order. *Id.* Yet the Adamses never asked the district court to modify or dissolve the state-court injunction before seeking our appellate review.

The broader context reinforces this reading. Congress has established us as an appellate court to review issues decided by others; we generally do not decide issues ourselves in the first instance. *See United States v. Houston*, 792 F.3d 663, 669 (6th Cir. 2015). If we were to "review" a state court's injunction order, however, we would in reality have to engage in a "first view" over whether the injunction was proper under the governing federal standards. *Id.* (citing *Wood v. Milyard*, 566 U.S. 463, 473 (2012)); *see* Fed. R. Civ. P. 65. State courts need not adhere to these federal standards when deciding whether to grant a preliminary injunction. *See, e.g.*, 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2943, at 72–79 (3d ed. 2013). Yet the standards will apply in federal court once a case gets removed. *See Granny Goose*, 415 U.S. at 437–38; *S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 101–02 (6th Cir. 1991). Suppose, for example, that a state court does not follow the federal rule that an order granting an injunction must "state its terms specifically[.]" Fed. R. Civ. P. 65(d)(1)(B). If we reviewed that order, we would be the first court to assess whether the injunction adequately satisfied this requirement. Not so if our jurisdiction extends only to a later district-court order that dissolves (or refuses to dissolve) the state-court injunction. We would then be reviewing a district court's decision against the same federal standards that the district court itself applied.

Precedent points the same way. The sole published circuit-court decision on this issue reached an identical result. *See Concordia Partners, LLC v. Pick*, 790 F.3d 277, 279 (1st Cir. 2015). In that case, Concordia obtained a state-court injunction to stop a former contractor, Marcelle Pick, from disclosing confidential information. *Id.* at 278. After Pick removed the case to federal court, she sought to appeal the state court's injunction order. *Id.* The First Circuit dismissed the appeal on jurisdictional grounds for all the same reasons. *Id.* at 278–80; *see also Marshall v. Hunter*, 670 F. App'x 221, 221–22 (5th Cir. 2016) (per curiam).

In response, the Adamses identify no circuit-court decision holding that § 1292(a)(1) grants a circuit court jurisdiction to review a state court's injunction order. They instead cite stray language from two decisions that otherwise have nothing to do with this topic. *See In re Diet Drugs*, 282 F.3d 220, 231–32 (3d Cir. 2002); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d

1300, 1304 (5th Cir. 1988); *see also Concordia*, 790 F.3d at 280 & n.4. These decisions note that, after removal, "interlocutory state court orders are transformed by operation of 28 U.S.C. § 1450 into orders of the federal district court to which the action is removed." *Nissho-Iwai*, 845 F.2d at 1304; *Diet Drugs*, 282 F.3d at 231–32. Yet the courts using this "transformation" language do not mean literally that the state-court orders become federal orders. Rather, they use that language as a shorthand way to express the idea that the state-court orders have the same authority as any other interlocutory order in district court and that the district court is free to reconsider them. In *Nissho-Iwai*, for example, the Fifth Circuit held that, after removal, a district court may reconsider a state court's interlocutory sanctions order just as the court could later reconsider its own interlocutory sanctions order. 845 F.2d 1303–05. If the state court followed state standards that were "inconsistent with federal standards," the Fifth Circuit added, that fact could provide a reason to modify the order. *Id.* at 1304; *see also Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 843 (6th Cir. 2013); *Diet Drugs*, 282 F.3d at 232 & n.7. This logic comports with our reasoning. As we have explained, a district court may, after removal, modify or dissolve a state court's injunction if the injunction conflicts with federal standards.

One last point. Just because parties cannot immediately appeal state-court orders under § 1292(a)(1) does not mean that state-court orders are completely unreviewable. If, for example, a district court issues a final judgment under § 1291, that final judgment incorporates all interlocutory rulings entered along the way—whether by a federal court or a state court. *See Reilly v. Waukesha County*, 993 F.2d 1284, 1286–87 (7th Cir. 1993); *see also Chaz Constr., LLC v. Codell*, 137 F. App'x 735, 743 (6th Cir. 2005); *Munsey v. Testworth Lab'ys*, 227 F.2d 902, 903 (6th Cir. 1955) (per curiam). But again, no final judgment exists here.

We thus dismiss this appeal for lack of appellate jurisdiction.