IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 12, 2017 Session

## WANDA KATZ v. THE SPORTS AUTHORITY OF THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TN, ET AL.

Appeal from the Circuit Court for Davidson County
No. 13C3528   Hamilton V. Gayden, Jr., Judge

_____

No. M2016-01874-COA-R3-CV

_____

Plaintiff sued the owner and the operator of a public venue after slipping on liquid on the floor and injuring herself.  Defendants moved for summary judgment.  In granting summary judgment, the trial court concluded, based upon the undisputed facts, that defendants did not have actual or constructive notice of the liquid on the floor.  Plaintiff appeals, arguing that wet spills throughout the venue and two other slip and fall incidents on the concourse area constituted a pattern of conduct, a recurring incident, or a general or continuing condition sufficient to put defendants on constructive notice of the liquid causing Plaintiff's fall.  Because Plaintiff failed to provide sufficient evidence of constructive notice, we affirm the grant of summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which JOHN W. MCCLARTY, J., joined.  FRANK G. CLEMENT JR., P.J., M.S., filed a separate, dissenting opinion.

David L. Cooper, Nashville, Tennessee, for the appellant, Wanda Katz.

J. Michael Clemons, Nashville, Tennessee, for the appellees, Sports Authority of the Metropolitan Government of Nashville & Davidson County, TN, and Powers Management, LLC.

# OPINION

## I.

On September 4, 2012, Wanda Katz was attending a concert co-headlined by Kiss and Mötley Crüe at the Bridgestone Arena. At around 10:20 p.m., Ms. Katz left her seat to make a purchase at the concession stand. On her way, she slipped and fell in a pool of liquid between sections 115 and 116 of the "100 Concourse" area. According to Ms. Katz, just before she fell, she noticed three people standing nearby, one of whom was carrying a small broom and dustpan. As a result of the fall, Ms. Katz sustained injuries to her left knee, which required two surgeries.

On August 29, 2013, Ms. Katz filed a premises liability action in the Circuit Court for Davidson County, Tennessee, against the Sports Authority of the Metropolitan Government of Nashville and Davidson County, the owner of Bridgestone Arena, and Powers Management, LLC, the manager of the arena, (collectively, "Defendants") for personal injuries sustained in the fall. The complaint alleged that Defendants were negligent in failing to maintain the arena in a reasonably safe condition, in failing to properly clean the spill off the floor about which they knew or should have known had they exercised ordinary care, in failing to warn patrons of the property's condition, in failing to correct the dangerous condition, and in failing to take reasonable precautions to protect patrons on their premises. Defendants answered, denying all material allegations in the complaint and asserting several affirmative defenses.

After some discovery, Defendants filed a motion for summary judgment. In their motion, Defendants argued that: (1) a dangerous condition did not exist;[1] (2) they had no actual or constructive knowledge of any dangerous condition; and (3) Ms. Katz was at least fifty percent at fault for the accident that led to her injuries. In support of their motion, Defendants attached excerpts of Ms. Katz's deposition; excerpts of the deposition of Ben Bosse, the director of event services at Bridgestone Arena; and portions of Powers Management's responses to Ms. Katz's interrogatories.

In response to the motion for summary judgment, Ms. Katz argued that there was a genuine issue of material fact as to whether Defendants had constructive notice of the dangerous condition. Specifically, she pointed to evidence that: (1) three of Defendants' employees were standing nearby at the time that she fell; (2) employees were instructed not to clean up until after the concert was over; and (3) at least one other slip-and-fall incident occurred in the same general area about an hour and twenty minutes before Ms. Katz fell. Among other things, Ms. Katz filed with her response an event log

---

[1] Defendants abandoned this argument at the hearing on the motion for summary judgment.

2

maintained by Defendants. The event log reflected incidents that were reported at the arena, such as wet spills, their location, and the date and time someone was dispatched to address the incident.

On July 19, 2016, the trial court issued a memorandum, which focused only on the issue of whether Defendants had actual or constructive notice of the spill on the floor that caused Ms. Katz's injuries. Noting that Ms. Katz "ha[d] not produced proof as to when and how the liquid substance appeared," "how long it had been there before she fell," or "that the [D]efendants actually had been alerted to the existence of the condition," the trial court concluded Ms. Katz failed to prove the essential element of notice. On August 5, 2016, the trial court entered an order granting Defendants' motion for summary judgment and incorporating by reference its memorandum.

## II.

### A. STANDARD OF REVIEW

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If the moving party satisfies its burden, "the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial." *Id.*

In this case, the party moving for summary judgment does not bear the burden of proof at trial. The burden-shifting analysis to be employed by courts tasked with deciding a motion for summary judgment in such situations is the same as that employed in the federal system. "[T]he moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015), *cert. denied*, 136 S. Ct. 2452 (2016). Satisfying this burden requires more than a "conclusory assertion that summary judgment is appropriate," rather the movant must set forth specific material facts as to which the movant contends there is no dispute. *Id.*

If a motion for summary judgment is properly supported, the nonmoving party must then come forward with something more than the allegations or denials of its pleadings. *Id.* at 265. The nonmoving party must "by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' at the summary judgment

stage 'showing that there is a genuine issue for trial.'" *Id.* (quoting Tenn. R. Civ. P. 56.06).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

## B. CONSTRUCTIVE NOTICE

In order to prevail on a negligence claim, a claimant must prove the following elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." *Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998), *overruled on other grounds by Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000) (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)). Normally, "negligence cases are not amenable to disposition on summary judgment unless" the inferences and facts taken together "are so certain and uncontroverted that reasonable minds would agree." *Burgess v. Tie Co. 1, LLC*, 44 S.W.3d 922, 923 (Tenn. Ct. App. 2000). With that in mind, we consider the extent of Defendants' duty of care to Ms. Katz. The duty of care is also a question of law, which we review de novo. *See West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005).

In a premises liability case, an owner's liability stems from his superior knowledge concerning the condition of the premises. *Nee v. Big Creek Partners*, 106 S.W.3d 650, 653 (Tenn. Ct. App. 2002). The owner of the premises "has a duty to exercise reasonable care to prevent injury to persons lawfully on the premises." *Id.* (citing *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998)). This duty includes a responsibility to remove or warn against hidden dangerous or defective conditions of which the owner is aware or should have been aware through the exercise of reasonable diligence. *Id.* However, owners do not have a duty to remove or warn against conditions that pose an unforeseeable risk or those conditions which the owner "'neither knew about nor could have discovered with reasonable care.'" *Id.* (quoting *Rice*, 979 S.W.3d at 308).

A plaintiff seeking to pursue a negligence claim based upon premises liability must prove, not only the elements of negligence, but also either (1) the premises owner or his employees created the dangerous condition that led to the plaintiff's injury or, (2) if a third party created the dangerous condition, the premises owner had actual or

4

constructive notice that the dangerous condition existed before the plaintiff was injured. *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014); *Blair*, 130 S.W.3d at 764. Here, Ms. Katz did not assert that Defendants or their employees created the spill that caused her fall. Ms. Katz also concedes that Defendants did not have actual notice of the spill on the concourse floor. So the appropriateness of the trial court's decision turns on whether the evidence presented in favor of and in opposition to the motion for summary judgment established a genuine issue of material fact on the question of constructive notice. *See Blair*, 130 S.W.3d at 765.

Constructive notice is defined as "information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Kirby v. Macon Cty.*, 892 S.W.2d 403, 409 (Tenn. 1994) (quoting BLACK'S LAW DICTIONARY 1062 (6th ed. 1990)). A plaintiff may establish constructive notice by either (1) proving that a dangerous condition existed for such a length of time that a reasonably prudent property owner should have been aware of the dangerous condition's existence or (2) proving that the dangerous condition resulted from "a pattern of conduct, a recurring incident, or a general or continuing condition." *Parker*, 446 S.W.3d at 351-52 (quoting *Blair*, 130 S.W.3d at 765).

Nothing in the record before us indicates how long the spill had been on the concourse floor before Ms. Katz fell. Ms. Katz argues, however, that the September 4, 2012 event log of incidents generated by Defendants shows constructive notice of a dangerous condition existing at the arena on the day of the concert.[2] Specifically, Ms. Katz argues that numerous wet spill incidents and at least two other slip and falls at

_____

[2] Ms. Katz also argues that her observation of three people standing near the area where she fell showed that Defendants had constructive notice of the dangerous condition. Ms. Katz "presumes" that the three were employees of Service Management Systems, also known as SMS, the firm hired by Powers Management to clean the arena. According to an affidavit, Kristina Barker, a former SMS employee, started her shift at 10:00 p.m. on September 4, 2012, with instructions "not to clean up until after the concert was over." Based on this affidavit, Ms. Katz further presumes that the three people she saw were not doing their job because Defendants instructed them not to clean up.

Although a night crew was instructed to clean up only after the concert was over, according to Mr. Bosse's deposition, another SMS crew "monitor[ed] the cleanliness of the arena throughout the night." Because the three people Ms. Katz saw were never identified, even if they were Defendants' employees, she did not know if they were part of the later, night crew. Ms. Katz did not dispute that SMS employees were cleaning up wet spills during the concert, as shown by the event log on which she relied.

Ms. Katz's "evidence" that the three people were not doing their job may be relevant to the issue of breach of duty. But we need not consider this question because Ms. Katz failed to establish constructive notice of a dangerous condition and, therefore, a duty on the part of Defendants. *See Blair*, 130 S.W.3d at 764-65 (describing the two ways to prove constructive notice).

the arena that day constituted a "pattern of conduct, a recurring incident, or a general or continuing condition." *Blair*, 130 S.W.3d at 765.

In *Blair v. West Town Mall*, our supreme court held a Tennessee plaintiff may prove that a property owner had constructive notice of a dangerous condition by showing a pattern of conduct, a recurring incident, or a general or continuing condition.[3] 130 S.W.3d at 765-66. The supreme court reasoned that a property owner should be put on constructive notice of a dangerous condition when the condition occurs regularly, placing a duty on the property owner to take reasonable steps to fix the "commonly occurring dangerous condition." *Id.* at 766. This provided plaintiffs with an avenue to prove constructive notice in the absence of evidence of the duration of a particular dangerous condition. *Id.* In those situations, the inquiry becomes "whether the condition occurs so often that the premises owner is put on constructive notice of its existence." *Id.*

Although not explicitly stated in *Blair*, an element of the inquiry appears to be the proximity between where the dangerous condition occurred previously and where the plaintiff suffered his or her injury.[4] *See id.* at 767 ("Sufficient facts are not present in this record to determine whether the [dangerous condition] in the area of the parking lot where [p]laintiff fell was part of a pattern of conduct, a recurring incident, or a general or continuing condition indicating the [dangerous condition]'s existence."). Courts applying *Blair* look for evidence that the dangerous condition previously occurred at the same place or near where the plaintiff was injured. *See, e.g.*, *Tinsley v. Wal-Mart Stores, Inc.*, 155 F. App'x 196, 198 (6th Cir. 2005) (affirming the grant of summary judgment to defendant because plaintiff presented no evidence that spills occurred regularly where he fell and rejecting plaintiff's argument that the court "should consider the entire floor of [the store] as the relevant location for the purposes of [a constructive notice] analysis"); *Martin v. Wal-Mart Stores, Inc.*, 159 F. App'x 626, 629-30 (6th Cir. 2005) (affirming the grant of summary judgment to defendant store and noting that "[a] history of leaks and spills in other departments could not have put [the store] on notice of water accumulating in the health and beauty aids department."); *Ferguson v. Wal-Mart Stores E., L.P.*, No.

---

[3] This approach has also been called the "common occurrence theory." *See Beske v. Opryland USA, Inc.*, 923 S.W.2d 544, 546 (Tenn. Ct. App. 1996) (referring to evidence of spilt beverages at the entrance to the turnstiles as a "common occurrence"); *Barrett v. Red Food Stores, Inc.*, No. 01-A-019108CV00302, 1992 WL 33891, at *5 (Tenn. Ct. App. Feb. 26, 1992) ("[T]he plaintiff established a common occurrence in that it was expected each time that ice cream vendors delivered ice cream, some water would accumulate on the floor.").

[4] In *Blair*, the plaintiff sued defendant mall after she slipped and fell on slick oil spots as she left the mall. *Blair*, 130 S.W.3d at 762. Plaintiff asserted that the mall knew that buses frequently dropped off customers near the entrance/exit, at the area where she fell, leaving behind slick oil spots. *Id.* at 762-63. The mall moved for summary judgment, arguing, among other things, that plaintiff could not show the mall had constructive notice of the dangerous condition. *Id.* at 763. In response, plaintiff argued that the mall's method of operation in allowing buses to stop and load/unload people and merchandise near the primary entrance/exits made it foreseeable that oil slicks would result. *Id.*

2:10-CV-245, 2011 WL 3739157, at *5 (E.D. Tenn. Aug. 24, 2011) (denying summary judgment for defendant based on evidence of the recurring condition of slippery floors during inclement weather in the aisle of the store where plaintiff fell and evidence of the leaky roof over the aisle where plaintiff fell).

Our review of the record indicates that thirty-three spills occurred throughout the arena before Ms. Katz's fall. Nine of these wet spills occurred over the entire "100 Concourse" area. Two slip and fall incidents also occurred in the 100 Concourse area: one in section 118 at around 9:01 p.m. and the other in section 106 at around 9:33 p.m. Our inquiry, however, is limited to whether "[s]ufficient facts are . . . present in this record to determine whether the [dangerous condition] in the area . . . **where [p]laintiff fell** was part of a pattern of conduct, a recurring incident, or a general or continuing condition indicating the [dangerous condition]'s existence." *Blair*, 130 S.W.3d at 767 (emphasis added). Viewing the evidence in the light most favorable to Ms. Katz, only two of the thirty-three wet spills occurred near the area where she fell: one in section 114/115 and one in section 116/117. The question then becomes whether the existence of these two seemingly random spills near the area where Ms. Katz fell occurred with such regularity that they constitute a pattern of conduct, a recurring incident, or a general or continuing condition.

While the supreme court in *Blair* did not elaborate on what facts would constitute a pattern of conduct, a recurring incident, or a general or continuing condition, previous case law applying this theory of constructive notice has required more than a random occurrence. For example, in *Beske v. Opryland USA, Inc.*, 923 S.W.2d 544, 546 (Tenn. Ct. App. 1996), plaintiff fell at defendant amusement park when passing through a turnstile at the entrance of a train station. Passengers boarding the train were required to discard their drinks before they could pass through the turnstile to board the train. *Id.* Evidence at trial showed that, rather than disposing of their drinks in a trash can, passengers would regularly throw their drinks on the ground near the turnstiles. *Id.* Defendant's employees were aware that these "spilled beverages were a common occurrence at the entrance to the turnstiles" and would clean up the area using a broom. *Id.* In affirming the jury verdict, this Court noted that "there is evidence that the spillage of beverages in the area was a common occurrence of which the defendant had constructive notice." *Id.*

Similarly, in *Barrett v. Red Food Stores, Inc.*, No. 01-A-019108CV00302, 1992 WL 33891, at *2 (Tenn. Ct. App. Feb. 26, 1992), plaintiff fell on a puddle of water near the ice cream freezer in defendant's store while an ice cream vendor was stocking the freezer. Evidence was introduced that water spilled on the floor where plaintiff fell each time an ice cream vendor stocked the freezer. *Id.* at *4. The manager at the store was aware of the clean-up procedure used by the vendor, which consisted of using a towel or a mop. *Id.* Because plaintiff established a common occurrence of a dangerous condition, a jury question was raised about whether defendant took reasonable precautions to protect

its customers from the dangerous condition. *Id.* at \*5. We affirmed the jury finding that defendant's clean-up procedure was inadequate. *Id.*; *see also Worsham v. Pilot Oil Corp.*, 728 S.W.2d 19, 20 (Tenn. Ct. App. 1987) ("[T]he requirements of constructive notice may be met where a dangerous condition inside a self-service business is not an isolated one but is reasonably foreseeable to the owner because the condition is established by a pattern of conduct, a recurring incident, or a general or continuing condition and an invitee suffers injuries as a result of the condition."); *cf. Beard v. SCOA Indus., Inc.*, No. 88-358-II, 1989 WL 60360, at \*5 (Tenn. Ct. App. June 7, 1989) ("The mere possibility of occasional popcorn spills is not enough to indicate that the defendant's method of operation created a hazardous condition.").

Here, Ms. Katz presented no evidence that the wet spills in the area where she fell occurred with such regularity that the dangerous condition was reasonably foreseeable to Defendants. As such, Ms. Katz provided insufficient evidence at the summary judgment stage to create a genuine issue of material fact as to the issue of constructive notice. So we conclude that the trial court did not err in granting summary judgment to Defendants.

### III.

Based on the foregoing, we affirm the trial court's grant of summary judgment to Defendants. This cause is remanded to the trial court for such further proceedings as are necessary and consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE